MORRIS GOODWIN, Administrator,

*vs.*

BOSTON AND MAINE RAILROAD.

York.　Opinion January 21, 1892.

*Railroad. Negligence. Passenger. Contributory negligence.*

The riding upon the platform of a passenger car upon a railroad is such negligence, on the part of the passenger, as will bar his recovery for injuries sustained by being thrown from the platform in rounding a curve.

ON MOTION AND EXCEPTIONS.

This was an action on the case for negligence in causing the death of plaintiff's intestate, while a passenger on train of defendant's road, by being thrown from the platform on which he was riding.

The writ alleges in the first count that, for want of "sufficient cars and reasonable accommodation," deceased was "compelled to remain standing upon the platform of the car," and while so standing, and in the exercise of due care, was thrown therefrom "wholly through defendant's negligence," his leg broken, and other injuries caused to his person and property.

In the second count, it is alleged to have been defendant's duty to provide "proper cars and sufficient and proper accommodations therein for passengers to be seated," which it failed to do ; and that deceased "was unable to obtain a seat or convenient standing room in said train," and "was obliged to stand upon the rear platform of the passenger car next the locomotive ;" that the track had a curve "very sharp and dangerous to be run over ;" and that defendant, well knowing the premises, "ran said train upon said sharp and dangerous curve, . . . at a very high and dangerous and improper rate of speed, so that the car upon the platform of which deceased stood, was suddenly, violently, and forcibly thrown against and upon the outer rail of said dangerous and sharp curve, and thereby said car was violently jerked and jolted," whereby deceased was "thrown from the car" and received injuries of which he died some twelve hours afterward.

It was in evidence, that the deceased, August 29, 1889, became a passenger on defendant's train at York *en route* for Portsmouth; that he did not enter any car of the train, of which there were three, but stood upon the rear platform of one of them until he was thrown, or fell, from the train and received injuries of which he died early next day.

There was some slight conflict of evidence as to the rate of speed at which the train was moving at the time, several of plaintiff's witnesses describing it generally as very fast, while the train employees and others testified that the train was moving at about the usual rate of speed.

At the point where deceased fell or was thrown from the train, there was a curve, but no evidence of any dangerous character it possessed in any way was given, while engineers and train men testified generally as to its safety and not exceptional character along the line.

Defendant claimed (1) that its road, track, and curvature were in no way dangerous, but entirely safe, and that its train was not run at either an unusual or a dangerous rate of speed, and that, therefore, it was not negligent in any particular; and (2) that the deceased, by voluntarily riding upon the platform of the car while the train was in motion, assumed the extraordinary risks of such an exposed position, and thus contributed to the injuries he received.

The view taken by the court of the merits of the case on the motion renders the exceptions immaterial.

*Samuel W. Emery* and *H. H. Burbank*, for plaintiff.

Plaintiff's intestate was in the exercise of due care under existing circumstances. He was a lawful passenger, entitled to a seat in defendant's car, which should have been provided for him by defendant. An excursion over the road had been advertised and defendant should, and by ordinary foresight could, have furnished sufficient seats for passengers. One empty car was left at York Beach prior to the return trip on which the deceased was injured. 2 Kent's Com. 602; 2 Greenl. Ev. § 221; Story's Bailments, § 601; *Warren* v. *Fitch. Railroad*, 8 Allen, 233; *Ingalls* v. *Bills*, 9 Met. 15; *Simmons* v.

*N. B. etc. St. Co.* 97 Mass. 368; *Barden v. B. C. and F. Railroad*, 121 Mass. 428; *Bates* v. *O. C. Railroad*, 147 Mass. 265; *Willis* v. *L. I. Railroad*, 34 N. Y. 670.

It was a hot August day, cars more or less crowded, and there was sufficient evidence from which the jury might well find that there were no vacant seats in the cars. He was not obliged to stand in the aisle. Therefore, he was neither "voluntarily," "unnecessarily," nor "improperly" riding upon the platform. Hence, his position under the circumstances was not contributory negligence. Shear. and Redf. on Neg. § 284; Beach on Contrib. Neg. § 54; *Maguire* v. *Mid. Ry. Co.* 115 Mass. 239; *Fleck* v. *Union Ry. Co.* 134 Mass. 481; *Goodrich* v. *Penna*, R. D. Co. 29 Hun, 50; *Willis* v. *L. I. Rd. Co.* 34 N. Y. 670.

Passengers may be justified or excused by circumstances, for which railroad corporation is responsible, in that it might have prevented them by requisite care and prevision. *State* v. *B. & Me. Railroad*, 80 Maine, 433; *Hooper* v. *Same*, 81 Maine, 267.

His position was, necessarily, a condition, but not a contributing cause of his injury. *O'Brien* v. *McGlinchy*, 68 Maine, 557; *Dewire* v. *B. and Me. Railroad*, 148 Mass. 347; *Willis* v. *L. I. Ry. Co.* 34 N. Y. 670; *State* v. *Railroad*, 52 N. H. 528; *Beers* v. *Housatonic Railroad*, 19 Conn. 566.

Whether or not Goodwin was in the exercise of due care, under all the circumstances, and so, whether his act — his position — was such contributory negligence as to preclude the right of action, was a question solely for the jury. *Keith* v. *Pinkham*, 43 Maine, 501; *Dunn* v. *G. T. Ry.* 58 Maine, 193; *Plummer* v. *Railroad Co.* 73 Maine, 592; *Hobbs* v. *Eastern Railroad*, 66 Maine, 575; *Shannon* v. *B. & A. Railroad*, 78 Maine, 59; *State* v. *B. and Me. Railroad*, 80 Maine, 431; *Hooper* v. *Same*, 81 Maine, 267; *Bigelow* v. *Rutland*, 4 Cush. 247; *Spofford* v. *Harlow*, 3 Allen, 176; *Barden* v. *B. C. & F. Railroad*, 121 Mass. 426; *Treat* v. *B. & L. Railroad*, 131 Mass. 372; *Fleck* v. *Union Ry. Co.* 134 Mass. 481; *McDonough* v. *Met. Railroad*, 137 Mass. 212; *Werle* v. *L. I. Railroad*, 98 N. Y. 650.

The lack of seats, the crowded condition of the cars, the summer heat, these and other facts, were properly submitted to the jury to determine whether this passenger had sufficient excuse or justification, considering the ordinary dangers of the platform, for riding thereon, and by their verdict it must follow that he was not guilty of contributory negligence. Nor was he presumed to know of the rule forbidding riding on platform. Such knowledge must be proved. *Dunn* v. *G. T. Ry.* 58 Maine, 192; *Hanson* v. *E. and N. A. Railroad* 62 Maine, 89.

There is evidence tending to prove that Goodwin took the precaution to hold on to the rail of the car, thus exercising ordinary prudence against the ordinary risks of such a position, *i. e.*, ordinary jars and shaking of the cars. The jury were warranted in finding that Goodwin used due care to protect himself against all perceptible or reasonable anticipated dangers; care which was sufficient until some unusual, unanticipated and extraordinary acts of the defendant occurred which threw him from the train.

Defendant's negligence alone caused the injury to this passenger Goodwin.

*a.* No sufficient, suitable accommodations were provided for passengers in a contingency which defendant had reason to anticipate both by previous advertisement and the presence of large numbers of passengers going over the road eastward prior to the return trip train from which Goodwin was thrown.

The care, skill and foresight required of carriers of passengers are commensurate with the magnitude of the interests involved, and with the attendant or anticipated dangers; and with the increase of danger, the law is more exacting in its measure of duty and responsibility.

That measure is defined thus: the utmost skill, the most careful management, extraordinary care, the highest diligence, the greatest possible precaution. Anything short of these becomes neglect and charges carrier. *Bish. Non-Contract Law*, §§ 1062, 1064; *Edwards* v. *Lord*, 49 Maine, 280; *Treat* v. *B. & L. Railroad*, 131 Mass. 371; *Werle* v. *L. I. Railroad*, 98 N. Y. 650, and cases *supra*.

*b.* It was the duty of defendant's conductor to show Goodwin to a seat, or a safer place, or to warn him of special dangers (the curve and rate of speed at which it was approached,) and otherwise, when needful, to direct his movements.    Misfeasance in this particular, resulting in damage, is actionable.    Bish. Non-Contract Law, § 1089 ; *Edwards* v. *Lord, supra* ; *Knight* v. *P. S. & P. Railroad,* 56 Maine, 234 ; *Dunn* v. *G. T. Ry. Co.* 58 Maine, 192 ; *Penn. Railroad* v. *McCloskey,* 23 Pa. St. 526 ; *McIntyre* v. *N. Y. C. Railroad,* 37 N. Y. 287 ; *Foy* v. *London, etc. Railroad,* 18 C. B. (N. S.) 225 ; *Simmons* v. *N. B. St. Co.* 97 Mass. 361 ; *Pittsb. etc. Railroad,* v. *Pillow,* 76 Pa. St. 510 ; *Flannery* v. *B. B. & O. Railroad,* 4 Wash. (D. C.) 111 ; Cooley on Torts, 1st Ed. p. 646 ; *Kentucky Cent. Railroad Co.* v. *Thomas' Admr.* 79 Ky. 3, 160, 165 ; *O'Donnell* v. *Railroad,* 9 Smith (Pa.), 239 ; *Gonzales* v. *Railroad Co.* 39 How. Prac. Reps. 407.

*c.* Defendant's conductor collected fare of Goodwin on the platform ; was standing near him as they approached the danger point ; knew his position fully, knew (or should have known) his danger ; knew of the curve and the dangerous speed of the train and consequent liability to extraordinary, unusual and necessarily violent shock, jar, jolt and lurch of the car ; had the power and the obligation to seasonably warn him ; had, further, the power and obligation to signal the engineer in a second's time to slacken speed ; either of which acts (if seasonably done) would have averted the injury to Goodwin ; failure to do either of which was negligence of the defendant subsequent to and independent of any negligence of Goodwin (if any there were), which negligence of defendant was the proximate, causal source of the injury, for which the defendant corporation is liable. Cooley on Torts, 1st Ed. p. 679 ; Bish. Non-Contr. Law, § § 462-4 ; *Hobbs* v. *Eastern Railroad,* 66 Maine, 572 ; *O'Brien* v. *McGlinchy,* 68 Maine, 552 ; *State* v. *Man. and Law. Railroad,* 52 N. H. 572 ; *Company* v. *Railroad,* 63 N. H. 159 ; *Beers* v. *Housatonic Railroad,* 19 Conn. 566 ; *Kerwhacker* v. *Railroad,* 3 Ohio St. 172 ; *Strauss* v. *Railroad Co.* 75 Mo. 185 ; *Morris* v. *Railroad Co.* 45 Iowa, 29.

The cases may be divided into three classes:   (1,) Where negligence of plaintiff and negligence of defendant succeed each other so quickly as to be practically simultaneous; here the defendant is not liable because he could not avert the result; (2,) Where the negligence of the plaintiff is followed by the negligence of defendant, and the plaintiff by exercise of ordinary care might have averted the result, the defendant is not liable; and (3,) Where the negligence of the plaintiff is followed by negligence of the defendant, and plaintiff did not know of defendant's negligence, and was not lacking in ordinary care in not knowing it, and defendant by exercise of requisite care might have averted the result, plaintiff's negligence is not contributory, and the defendant is liable.

In other words, plaintiff's negligence is the remote, and defendant's negligence is the proximate cause of the injury, and the fact that without plaintiff's negligence the injury would not have occurred, will not discharge or excuse defendant.

Here, Goodwin would probably not have been injured if he had not been standing on the platform; defendant knew he was there, fully understood his danger, (unknown to himself,) knew of the special danger at the curve, might have ordered him to go into the car if he could get in, might have warned him to guard against the extraordinary shock at the curve, or might have checked the speed of the train by giving in a second's time the signal to reduce speed; and had it done either of these obligatory acts, it would have discharged its duty; failing to do all or any of them, it is liable.   *Company* v. *Railroad*, 63 N. H. 159, and cases, *supra*.   This question was properly submitted to the jury.   *O'Brien* v. *McGlinchy*, *supra*, and citations; *Treat* v. *B. and L. Railroad* 131 Mass. 371; *Lapointe* v. *Mid. Railroad*, 144 Mass. 18; *Griffin* v. *B. and A. Railroad*, 148 Mass. 146; *Willis* v. *L. I. Railroad*, 34 N. Y. 670; *Werle* v. *same*, 98 N. Y. 650; *Tanner* v. *L. & N. Railroad*, 60 Ala. 621; *Ala. Gr. So. Railroad* v. *Hawks*, 72 Ala. 112.

The jury were fully warranted in finding subsequent or proximate and causal negligence of defendant, under the instructions of the court, which instructions embodied the well-founded rule

in *O'Brien* v. *McGlinchy,* 68 Maine, 557 ; and *Hobbs* v. *East. Railroad,* 66 Maine, 552, and other cases, *supra.*

*G. C. Yeaton,* for defendant.

EMERY, J.    This was an action on the case, the declaration alleging that the defendant company by its negligence, in running one of its trains, injured the plaintiff's intestate, a passenger on the train.    The jury returned a verdict for the plaintiff, which verdict the defendant has moved us to set aside as against law and evidence.

Reading the evidence as favorably for the plaintiff as can reasonably be done, the jury might have found the following facts. The defendant company August 22, 1889, owned and operated a branch railroad from York Beach to its main line between Portland and Boston.    On that day it ran an excursion train from Portsmouth to York Beach and return.    In the afternoon, this train left York Beach on its return trip, with a baggage car next the locomotive and three ordinary passenger cars following, one empty passenger car having been left at York Beach.    The day was hot and the cars were uncomfortably crowded.    The seats were all occupied either with passengers or baggage, and many passengers were standing in the aisles, or sitting on the arms of the seats.    There was unquestionably, however, standing room in the cars for several dozen more passengers.    Each car had ample standing space for several extra passengers.

The plaintiff's intestate, Daniel Goodwin, thirty years old, in possession of all his senses, and having the proper ticket, got on the rear platform of the first passenger car from the baggage car, and there stood leaning against the end window of the car, and facing to the rear.    He did not enter any of the cars, or inquire for any seat, but remained standing on the platform as described, after the train started and was under full headway. The conductor took up his ticket on the platform, but did not direct him to a seat, nor caution him against standing on the platform.    There was the usual notice on the car doors forbidding passengers standing on the platform, but there was no direct evidence that Goodwin saw this sign.

The train was running at speed variously estimated from thirty to forty miles an hour, and in going round a five degree curve without slackening speed, Goodwin was shaken or thrown from the platform, and suffered severe injuries of which he afterward died. As the train went round the curve, the speed caused violent concussion of the car wheels against the rails, so that there was considerable lurching of the cars. Some standing passengers were thrown against the seats, and some sitting passengers against their neighbors. The end window behind Goodwin was broken. Nothing else gave way, however, and no one else was hurt.

The jury by their verdict must have found that the above described conduct of the defendant company was negligent, and that the conduct of Goodwin, above detailed, was free from that fault. The plaintiff's counsel urges that the jury was the legal tribunal, not only to determine all the facts and circumstances, but also to adjudicate whether the acts or omissions of the parties were prudent or negligent. This is true ; we have repeatedly so held. The whole subject of negligence, of the power and province of the court and jury in ascertaining the facts, and drawing inferences from them, has been so fully and lately considered, there can be no need to even restate here the propositions established. *York* v. *Maine Central R. R. Co. ante* p. 117 ; *Lasky* v. *Canadian Pacific Ry. Co.* 83 Maine, 461.

None of the many authorities on this subject, however, deny or question the necessary power of the court to review the judgment of the jury, and set it aside if it be found inconsistent with evidence and with reason.

Waiving for the present, the character of the defendant's conduct, we will first consider the character of the conduct of the plaintiff's intestate. Here the question is whether the judgment of the jury is, in any light, consistent with reason and truth ; whether the jury's conclusion can be reached by any correct process of reasoning, by fair-minded, reasonable men ; whether the opposite conclusion that Goodwin's conduct was negligent, is the only reasonable conclusion from all the facts and circumstances.

The danger of standing on the narrow platform of a passenger car, while the car is moving with the usual speed of railroad trains, is most conspicuous. No prudent man, no man ordinarily mindful of his conduct and of matters about him would occupy such a position. The greater the speed of the train, the more imminent the danger in such a place. Thoughtful people instinctively shudder when they see a person taking such risks. Curves are necessarily frequent on railroads in Maine, a fact well known to all, and a fact which makes the riding on the platform of a car most perilous.

The knowingly incurring such an imminent visible peril, the choosing to ride in such a conspicuously dangerous place, must be held by all reasonable people to be recklessness in a high degree. The danger, the chance of injury, is visibly imminent and great. No man of reason can fail to apprehend it. No prudent man would fail to avoid it. There seems to us no room for debate or question upon this proposition.

The plaintiff's counsel, however, urges that, in this case, there were circumstances which justified the jury in declaring Goodwin's conduct to be free from fault. He calls our attention to the circumstances, that the day was very hot, that the cars were dusty and uncomfortably crowded, that no train man showed him a seat, or advised him where he could find a seat, that the conductor took his ticket on the platform, and made no objection to his standing there, and that he did not see the sign on the car door.

Did all these circumstances combined hide, in the least, the danger,— make it less conspicuous and imminent? Would they in any way tend to throw a prudent man off his guard, or quiet his apprehensions of danger? All these circumstances may have made it more agreeable to ride on the platform in the open air than to stand inside the hot crowded car, but they did not in the least lessen the danger, nor the appearance of danger in so doing. That Goodwin was not ordered off the platform, could not have led him to believe it was safe to ride there. He needed no warning of such a danger. He knew the place for passengers was inside the car. The discomfort of the hot and

crowded car, did not make it any more prudent for him to ride outside upon the platform. Within the car, with all its discomforts, was safety. Without the car was obvious peril. The safe path is often more narrow and difficult than the way which leads to destruction, but no man is excused for that reason from seeking the one and avoiding the other.

Viewing all the circumstances in every light suggested by the counsel, or imaginable by us, we see no escape from the conclusion that Goodwin's conduct was far below the standard of ordinary prudence, and that such lack of prudence directly caused his injury. Such being our opinion, we must for that reason render judgment accordingly, and set the verdict aside.

We have examined every authority cited on both sides, but the above proposition seems to us so clear and simple, so consonant with reason, that we forbear to cite or explain other cases. The curious will find them cited and commented upon in the parallel case of *Worthington* v. *Cent. Vermont R. R. Co.* 23 Atl. Rep. 590, (64 Vt.) published since the above opinion was written and concurred in.

*Motion sustained. Verdict set aside.*

PETERS, C. J., WALTON, VIRGIN, FOSTER and HASKELL, JJ., concurred.