# PHILANDER V. SAUNDERS, Appellant, v. SOUTHERN PACIFIC COMPANY, Respondent.

## CARRIERS—INJURIES TO PASSENGERS—LIMITING LIABILITY—CONTRIBUTORY NEGLIGENCE.

1. The defendant entered into a contract with one N. to transport sheep, under which plaintiff accompanied them as an attendant. The cars in which the sheep were placed were provided with doors at either end, so that the attendants could pass from the caboose through the cars and care for the sheep. On the way the conductor put on three refrigerator cars between the sheep cars and the caboose, thus obliging the plaintiff, against his protests, to cross the refrigerator cars on the running boards on top of these cars, which were higher than those containing the sheep. At a certain point on the road the train passed through a snowshed, which was built before the construction of the refrigerator cars, and was not high enough for a person to walk on top of the cars when passing through the shed. The conductor gave the plaintiff no warning of the shed nor of the danger arising from walking on top of the refrigerator cars while passing through said shed. Plaintiff had been in the cars to care for the sheep and was returning to the caboose with his back to the engine, walking on one of the refrigerator cars, when he was struck by a crosspiece and received the injury complained of. There was no whistle sounded or warning given when the train approached the snowshed. *Held* error to grant a motion for a nonsuit.

2. Negligence is never considered a question of law for the court, unless the facts shown by the evidence are such that all reasonable men must draw the same conclusion from a consideration of them, or are such as would warrant the court in setting aside the verdict of the jury if one were based on them.

3. Plaintiff was entitled to protection as a passenger on such train, and that regardless of any clause in the contract exempting

the company from liability. Such clause is against the policy of the law.

4. The court inclines to the view that it was negligence *per se* on the part of the defendant, not to maintain the shed high enough for a person to pass beneath it safely while walking on top of the refrigerator cars; but if for any reason it may be lawful to maintain the shed at an insufficient height, then the exercise of ordinary care requires the railroad company to give warning in some way—either by word or other proper method—of the train's approaching the same, to all persons whose duties expose them to danger because of the structure.

5. Whether or not the plaintiff was, under the peculiar facts and circumstances of this case, guilty of contributory negligence, was a question for the jury, and not one of law for the court.

6. Attendants on stock in transit on a railroad assume all ordinary risks incident to such service, and it is the duty of the railroad company to provide reasonably safe structures and facilities for such transportation.

MINER, J., dissenting.

(No. 626. Decided April 3, 1896. 44 P. R. 932.)

Appeal from the district court of the Fourth judicial district, Territory of Utah. Hon. H. W. Smith, *Judge.*

Action by Philander V. Saunders against the Southern Pacific company for damages sustained by plaintiff while a passenger on defendant's train. From a judgment of nonsuit, plaintiff appeals. The facts are set out in the opinion of the court and in the opinion of Justice Miner, dissenting.

*Evans & Rogers* and *A. G. Horn,* for appellant.

The point most relied upon by respondent in the lower court was that of contributory negligence. It insisted that appellant was guilty of culpable negligence in voluntarily placing himself in an obvious and known place of danger.

.. We insist that under the circumstances of the case the overwhelming weight of authority is opposed to this view. In what was he negligent? He was properly performing the work for which his presence was designed in the ordinary and customary manner. His work called him to the place where he received the injury. He was there not by choice, but by the necessities of the occasion, made so by the misconduct of respondent. He was a passenger, in one sense, having the privilege and freedom of the train in the manner in which he was using it. It was necessary to do his work while the train was in motion. It was of such a character that it did not require him to remain in the stock car and expose himself to the severity of the weather and odor of the sheep. His attention was engaged in keeping his balance on the cars. No warning was given of the approaching danger. How, then, can it be said, as a matter of law, that the jury should not pass upon the question of contributory negligence. Authorities are almost without number, that the case presents one for the consideration of the jury. *Carpenter* v. *Ry.*, 56 Fed. Rep. 451; *Thomas* v. *Ry.*, 60 Fed. Rep. 379; *Lawson* v. *Ry.*, 64 Wis. 447; *White* v. *Ry.*, 67 Fed. Rep. 481; *Horst* v. *Ry.*, 93 U. S. 291; *Tibby* v. *Ry.*, 82 Mo. 292; *Johnson* v. *Ry.*, 116 Ill. 206; *Rowan* v. *Ry.*, 3 N. E. Rep. 627; *Irwin* v. *Ry.*, 16 Pac. Rep. 146; *Flanders* v. *Ry.*, 53 N. W. R. 544; *Kane* v. *Ry.*, 128 U. S. 91-96; *Wright* v. *Ry.*, 17 N. E. 584; Hutchinson on Carriers, Sec. 654, A; *Wallace* v. *Ry.*, 138 N. Y. 302; *Waterbury* v. *Ry.*, 17 Fed. Rep. 671.

Contributory negligence of the party injured will not defeat the action if it be shown that the defendant might, by the exercise of reasonable care and prudence, have avoided the consequences of the injured party's negligence. *Grand Trunk Ry.* v. *Ives*, 144 U. S. 408; *Smith* v. *Rio Grande Ry.*, 9 Utah 141; *Wood* v. *Ry.*, 9 Utah 146;

*Wines* v. *Ry.*, 9 Utah 228; *Olsen* v. *Ry.*, 9 Utah 129; *Everett* v. *Ry.*, 9 Utah 340; 1 Sherman & Redfield on Neg. 99.

*Marshall & Royle,* for respondent.

The passenger is bound to conduct himself while upon the train in a prudent manner, and if he unnecessarily or negligently exposes himself to danger, and as a consequence is injured, he cannot recover redress from the company, although it was also negligent, because in such case the fault is mutual. *Brennan* v. *R. R. Co.*, 45 Conn. 284; *Willis* v. *Long Island R. R. Co.*, 34 N. Y. 670; *Hickey* v. *Boston, etc., R. R. Co.*, 14 Atl. 427; Wood's Ry. Law, vol. 2, p. 1083 and cases cited; Patterson's Ry. Accident, p. 282; *Penn. R. R. Co.* v. *Langdon*, 92 Penn. St. 21; *Goodwin* v. *R. R. Co.*, 84 Maine 203.

The fact that a passenger did not know that his act was careless will not avail him, *as he was bound to know. Penn. R. R.* v. *Henderson*, 43 Penn. State 449; *Southern R. R. Co.* v. *Kendrick*, 40 Miss. 374; *O'Donnell* v. *R. R. Co.*, 59 Penn. State 239.

Passengers passing from car to car unnecessarily, do so at their own risk, and are bound to know that it is dangerous to do so. *McIntyre* v. *N. Y. Central*, 34 N. Y. 287.

If the facts are undisputed, and fail to show that the plaintiff was in the exercise of due and reasonable care at the time of the accident, it is the duty of the court to instruct the jury that he cannot recover. *Gavett* v. *R. R. Co.*, 16 Gray (Mass.) 501.

It is contributory negligence in a passenger to put his head or arm out of the window of a car in motion. *Todd* v. *R. R.*, 3 Allen 18; *R. R.* v. *McClurg*, 56 Penn. St. 294; *Holbrook* v. *R. R.*, 12 N. Y. 236.

It is contributory negligence for a passenger to ride in a baggage car or other car not intended for the carriage of passengers, provided it was a contributory cause of the

accident, and was of itself so dangerous a place that a man of ordinary prudence would not have voluntarily occupied it under ordinary circumstances. Patterson Ry. Accident, 285.

Even if defendant was negligent, yet if plaintiff's negligent or imprudent act or conduct contributed to his injuries, he cannot recover. *R. R.* v. *Letcher*, 12 E. & A. 115; *R. R.* v. *Aspell*, 23 Penn. St. 147.

The case of *Indianapolis, etc., R. R. Co.* v. *Horst*, 93 U. S. 291, is referred to as in favor of plaintiff. This case is clearly distinguished in Wood's Ry. Law, vol. 2, p. 1121, 93 U. S. 291.

If danger is obvious and such as a reasonable man would not have incurred, the passenger must not assume the risk. *Hazard* v. *Chicago, etc., R. R.*, 1 Bissell 503; *Pittsburgh* v. *Krause*, 30 Oh. St. 220; *Chicago, etc., R. R.* v. *Randclph*, 53 Ill. 510; *Jefferson, etc., R. R.* v. *Swift*, 26 Ind. 549.

Defendant does not contend in this case, that, as between the defendant as a railroad carrier and a passenger being carried by it, it could contract to be absolved from liability. The point made on the trial below in this connection was, that Thomas Nelson, this defendant, and plaintiff all being present, and to be present during the transportation, and action therein, agreed between themselves that Thomas Nelson alone should be responsible to plaintiff for any damage he might sustain. The plaintiff agreed to this. We wish simply to submit to the court whether or not this contract between these three persons could not be made, and as between them be legal and binding. But we will say that this point was not embraced or relied upon in defendant's motion for new suit. (See deft's abstract, page 9.)

We submit this case to the court with the suggestion, that if plaintiff is right in the contention, then, not only

must bridges and snow sheds be built or rebuilt to accommodate travel over the tops of the cars but the tops of the cars would have to be protected by safe guards for persons walking thereon, proper platforms kept in good condition and railings to guard the same, with additional and safe appliances for persons ascending to and descending from the tops of the cars, while the speed of trains would have to be regulated to insure the safety of persons passing over the top, whencver they should pass thereon, and trains slowed up at sudden turns in the road, or the road made straight.

BARTCH, J.:

The plaintiff brought this action to recover damages for personal injuries alleged to have been sustained through the negligence of the defendant. At the trial of the cause, when the plaintiff rested his case, he was nonsuited, and thereafter a motion for a new trial was refused. Thereupon he appealed to this court, claiming that the trial court erred in granting the motion for a nonsuit and dismissed the action, and in overruling and denying his motion for a new trial. The facts disclosed by the plaintiff's testimony, and admitted by the pleadings, are substantially as follows: The defendant, at the time the plaintiff received the injury complained of, operated a railroad between Ogden, Utah, and San Francisco, Cal. On the 21st day of January, 1892, at Iron Point, in Nevada, the defendant entered into a contract with one Thomas Nelson for the transportation of 11 cars of sheep over its railroad to San Francisco. The contract provided free passage on the stock train for the plaintiff, who was an attendant to care for the sheep, and that the defendant, by reason of such free passage, would not be liable for any negligence upon its part by which the plaintiff might be injured. Under this contract, Thomas

and Charles Nelson, the owners, loaded the sheep into cars furnished by the company. Each car had doors, through which the attendants could pass, at either end, and at the rear of the cars for the sheep there was attached a caboose for the use of the attendants and trainmen; and these cars and caboose remained so connected for two days, until they arrived at Truckee. There the servants of the defendant, with the knowledge of the conductor of the train, although expressly objected to by the plaintiff and Nelson, switched three refrigerator cars into the train, between the caboose and sheep cars. These cars so placed in the train had no doors at the end, and were a foot to 18 inches higher than the cars containing the sheep, and had a running board on top. When sheep are being shipped in cars, they are liable to get killed by crowding onto each other and trampling each other down. To prevent this, it is the duty of the attendants to pass through the train and help them up. Before the train started from Truckee, the plaintiff, Nelson, and one Scott went forward through the cars, as was the custom, to lift up the sheep which had fallen down, and it pulled out while the men were thus engaged. Switching of the train prevented them from attending the sheep before starting. The train had not proceeded far to the westward, when, their work having been completed, the plaintiff and Nelson got upon the top of the cars to return to the caboose, because they could not pass through the refrigerator cars. Thus returning, with their backs towards the engine, and having reached the refrigerator cars next to the caboose, each one of them was struck in the back of the head by a crosspiece of the overhead portion of a snowshed, and Nelson was killed, and the plaintiff severely and permanently injured. Since the time of the construction of the snowshed in question, the defendant has been using freight, refriger-

ator, and furniture cars, which are higher than those in use at that time, but had not raised that snowshed, although the new ones built since were made higher. The one which caused the injury is situated on the side of a mountain which is not steep enough to indicate snow-slides or avalanches, and there is nothing to interfere with building it higher, and the plaintiff had no notice of its insufficient height. It was customary for, and the defendant knowingly permitted. the attendants upon stock to return to the caboose upon the running boards, while the train was in motion. On the occasion in question the weather was very cold and stormy, and there were no accommodations for the attendants on the stock except in the caboose. The conductor of the train knew that the plaintiff and Nelson were attendants on the sheep, and that they were somewhere on the train, and, in order to reach the caboose, would be required to return over the tops of the cars, on account of the refrigerator cars which had been put next to the caboose. It was necessary for them to care for and help up the sheep, and then leave the car as soon as practicable, as their presence would disturb them and cause them to move together and tread upon each other. The plaintiff knew that there were snowsheds on the road west of Truckee, but did not know just where they were. He knew that they had passed through one snowshed, and expected to hear the whistle, as a signal, before entering another, as this was a requirement, under the rules of the defendant; but he heard none, and there was no warning whatever given of the obstructions of snowsheds. When the plaintiff and Nelson were struck, one Pascal called out to stop the train, and the train was stopped immediately.

Assuming these facts to be true, which is the rule for the purposes of a nonsuit, the question is, do they present such a case of negligence on the part of the defendant,

and such a want of contributory negligence on the part of the plaintiff, as will render the defendant liable, and warrant a recovery? Would they, unexplained and uncontradicted by the defendant, support a verdict of a jury? Counsel for the appellant contend that the respondent was guilty of negligence in operating its cars through a snowshed of insufficient height to admit the passage of the appellant walking on the running board, in placing the refrigerator cars next to the caboose, and in failing to sound the whistle or give any warning before the train entered the snowshed. On the other hand, counsel for the respondent insist that it was an act of gross negligence on the part of the appellant to walk on top of the cars on the occasion in question, and that, therefore, he cannot recover.

In negligence there is no purpose to perpetrate a wrong upon another, nor to omit to perform a duty towards another. There is, however, a want of proper skill or care or attention. Such is the general idea that where one person does or omits to do an act which causes injury to another, not intentionally, and there is an absence of proper skill or care or attention, such doing or omitting to do the act is characterized as negligence, and the author of the injury is liable therefor, in the absence of negligence on the part of the person injured. It has been defined as, in its civil relation, being such an inadvertent imperfection by a responsible human agent, in the discharge of a legal duty, as immediately produces, in an ordinary and natural sequence, a damage to another. Bouv. Law Dict. Legal duty is one of the essential elements in negligence, and, unless it exists in favor of the person injured, he can have no redress. Even though such duty is owed to the public in general, still, unless the injured person can show that for some reason it was specially owing to him, he can maintain no action in his

private capacity.   It is incumbent upon the plaintiff, in every action for negligence, to aver and prove facts sufficient to show that the defendant owes him a duty, and what it is.  Such duty must be to use care, which includes skill and vigilance, and the degree of which must be such as a reasonable and prudent person would use under similar circumstances, or such as the existing circumstances demand.  1 Shear. & R. Neg. §§ 8, 9.  Applying these principles to the case at bar, in order that the plaintiff may be entitled to recover,—there being no question made as to the pleadings,—his proof must show that the defendant on the occasion in question owed him a duty, and that, in the performance of which, it failed to exercise ordinary care, skill, or vigilance.  That this was shown by the testimony of the plaintiff hardly admits of doubt or controversy, upon consideration of the facts above set out.  It appears that the defendant is a common carrier, engaged in the transportation of passengers and freight.  By contract, it engaged to carry the plaintiff as an attendant upon the stock in its cars.  He thereby became a passenger, and entitled to protection as a passenger, on such a train; and this regardless of any clause in the contract exempting the carrier from liability for the negligence of agents and servants, because such clause was against the policy of the law, and therefore without effect.  Such carriage was not gratuitous, because the contract was the moving, and a valuable, consideration.  When the company had contracted to carry, and the conductor of the train had received him, it was liable for any injury which might befall him through the negligence of its agents and servants, the same as though he had actually paid his fare before entering its cars, and the defendant was bound to exercise the same care. Hutch. Carr. § 555b; Patt. Ry. Acc. Law, §§ 211, 212; *Railroad Co.* v. *Horst,* 93 U. S. 291; *Railroad Co.* v. *Lock-*

*wood,* 17 Wall. 357; *Railroad Co.* v. *Curran,* 19 Ohio St. 1; *Railroad Co.* v. *Henderson,* 51 Pa. St. 315; *Erskine* v. *Loewenstein,* 82 Mo. 301; *Lawson* v. *Railroad Co.,* 64 Wis. 447, 24 N. W. 618. Being on the train, it was the plaintiff's duty to care for the sheep. After having attended to his duty in this regard, he was, of necessity, compelled to return to the caboose, because there was no place provided for him in the sheep cars to remain there, and to do so would disturb the sheep and produce the very effects which it was his duty to prevent. He could not return through the cars, on account of the refrigerator cars, through which he could not pass, having been placed next to the caboose, and therefore attempted to return over the top of them, as stockmen had been accustomed to do.

The conductor knew he was somewhere on the train, and was compelled to go over the tops of the cars to get to the caboose, but gave him no warning of its approaching the snowshed, which was of insufficient height to permit him to pass through safely while walking on the running boards. Under these existing facts and circumstances, it is not absolutely necessary or material to decide whether or not it was negligence *per se,* on the part of the railroad company, to maintain the snowshed in question at an insufficient height to allow a person to pass through safely while walking on top of the moving cars, although we are inclined to the affirmative of this view, as founded on both reason and justice. If, however, for any reason, an overhead structure, which exposes persons who are rightfully on a moving stock train, as was the plaintiff, to unusual risks, may be lawfully maintained at such height, then every principle of justice, as well as the exercise of ordinary care, requires that the company which maintains such structure shall give warning in some way—either by word, or other

proper method—of the trains approaching the same, to all persons whose duties may expose them to the danger of being injured because of the structure. The giving of such warning is a duty which such company cannot fail to perform, and escape liability for injuries which result as a natural sequence, because of such failure, and in the performance of such duty it is bound to exercise due care. We are aware that some courts seem to maintain a contrary view, but we think the doctrine above stated is supported by the weight of authority, and it is beneficial to both the passenger and the company. It tends to protect the former, and warns the latter against the consequences which result from the absence of proper care and precaution. While such attendants on stock in transit on a railroad must assume all ordinary hazards incident to such service, still it is the duty of the company which transports the stock to provide reasonably safe structures and facilities for such transportation, and parties contracting with such carriers have the right to assume that such duty has been discharged. Beach, Contrib. Neg. § 134; Shear. & R. Neg. §§ 198, 200; *Rrilroad Co.* v. *Horst, supra; Railway Co.* v. *Carpenter,* 5 C. C. A. 551, 56 Fed. 451; *Railway Co.* v. *Irwin,* 37 Kan. 701, 16 Pac. 146; *Railroad Co.* v. *Johnson,* 116 Ill. 206, 4 N. E. 381; *Railroad Co.* v. *Wright* (Ind. Sup.), 17 N. E. 584; *Railroad Co.* v. *Welch,* 52 Ill. 183; *Railroad Co.* v. *Rowan* 104 Ind. 88.

We conclude that the appellant was rightfully on the train, and had the right to assume that the snowshed was a safe structure, having received no notice to the contrary; that the respondent, on the occasion of the accident, was guilty of negligence, under the circumstances indicated by the proof; and that there was presented a question for the jury, and not one of law for the court. Whether or not the appellant, under the peculiar facts

and circumstances of this case, was himself guilty of a want of ordinary care, which contributed to the injury, was also a question for the jury. The court was not warranted, under the circumstances shown by the record, in deciding, as a matter of law, that the appellant was guilty of such contributory negligence as precluded a recovery, and therefore was not warranted in granting the nonsuit, or denying the motion for a new trial. Negligence is never considered as a question of law for the court, unless the facts shown by the evidence are such that all reasonable men must draw the same conclusion from a consideration of them, or are such as would warrant the court in setting aside the verdict of the jury if one were based on them. For a further discussion of the subject of nonsuit, we refer to the case of *Lowe* v. *Salt Lake City*, 13 Utah 91, 44 Pac. 1050.

As a new trial must be granted, we do not consider it necessary to discuss any other questions presented in the record. The judgment is reversed, with costs, and the cause remanded, with directions to the court below to grant a new trial.

ZANE, C. J., concurs.

MINER, J. (dissenting):

I do not fully concur with the opinion and reasoning of the majority of this court in this case. The opinion is based upon the facts recited therein, and largely, though doubtless unintentionally, overlooks that part of the testimony showing negligence on the part of the plaintiff, upon which the nonsuit was evidently based. The contention of the appellant is based upon the alleged negligence of the respondent (1) in operating its cars through a snowshed which was of insufficient height to

admit the passage of appellant, walking on the running board, when returning from attending to the sheep; (2) by switching in three refrigerator cars, which were 12 to 18 inches higher than the stock cars, containing no end doors, between the caboose and stock cars, thereby compelling appellant to walk over the tops of such cars while returning to the caboose; (3) in failing to sound the whistle, or to give any other warning before the train entered the snowshed. The respondent, upon its part, claims that the injury complained of is traceable wholly to the gross negligence on the part of the appellant, as shown by the proof, and that the respondent was free from negligence which caused the injury. The trial court adopted the latter view, and granted the nonsuit.

In order to be advised more fully upon the question of negligence charged against the appellant, it is necessary to examine the facts presented in the opinion of this court in connection with the additional facts as shown by the abstract on file. It appears from the testimony of the plaintiff that he worked for the defendant company 10 or 11 months in 1888, as foreman of a freight train running from Wadsworth to Truckee, and had gone over the road west of Truckee twice on a passenger train, and knew there were snowsheds within a mile or two west of Truckee, and plenty of them between Truckee and Summit, which places were 12 miles apart. At the time of the accident, appellant had passed through one snowshed. It also appears that there were 19 stock cars, 3 freight cars, and a caboose, in the train going west. Eight loaded cattle cars were next to the engine, the 11 loaded sheep cars behind them, and next came the three refrigerator cars and the caboose. These refrigerator cars are not shown to have been loaded. When this train started from Truckee, Nelson, Spencer, and the appellant went through the sheep cars next to the engine, east, and passed

through all the cars. Spencer, who was with them, commenced on the east end, and went through the cars, west. Nelson had been over the road many times, and knew the location of the snowsheds. Spencer remained in the sheep cars. There were doors at each end of the sheep cars for the attendants to pass through. The three refrigerator cars were placed between the sheep cars and the caboose at Truckee, before the train started. The appellant objected to these cars being placed next to the caboose. The refrigerator cars were about one foot higher than the other cars, and had no end doors, as the appellant well knew. Plaintiff testified, in substance, that he said to Nelson "that we had better get back to the caboose over the tops of the cars, because we can get back quicker." The emergency that called them back to the caboose was that it was getting cold, and that by staying in the car they would disturb the sheep; that, while it was dangerous, it was quicker and more convenient. When on the tops of the cars, going back, it was cold and snowing hard. He says, in substance: "The wind and snow was blowing in our faces, and we had all we could do to stay on the top of the cars. I did not look for snowsheds when going back. The snow was whirling around us so that we could hardly see what we were doing. We had all we could do to get over the tops of the cars. We could have passed through the cars with Spencer, but did not want to pass through all the rest of the cars. Spencer remained in the car, and was safe. The snow was just drifting and blowing across the tops of the cars, and we couldn't see very well, and we faced all these things rather than stay down there with Spencer. In going over the tops of the cars, towards the caboose, we did not look back to see if the train was approaching the snowsheds. I knew there were snow-

13 UTAH—19

sheds in that vicinity, but I supposed I would hear a
signal before entering them. I knew I was in a dangerous
place, and did not look behind to see if we were approach-
ing the snowsheds. We had all we could do to see the
cars in front, and to see where we were going. If we had
looked back we probably could have seen, but we might
have been in danger of falling over. We might have
laid down and looked around. Q. It was safer to go
through there than to climb up when the wind and snow
were blowing? A. Possibly it was safer, but it was not
as quick. It was more convenient to go on top. Cer-
tainly it was more dangerous. It grew dark on the train
entering the snowsheds. It was dangerous at that time
in getting over the tops of the cars. I knew the train
would stop at a number of places west, but did not
know how far it was to the next place. I worked on
that road eleven months, but did not know how far it
was from Truckee to Summit. I do not suppose the con-
ductor knew right where we were, but he knew we must
be somewhere on the train, in charge of the stock. We
left Spencer in the car to finish his job. He stayed there
until after the accident happened. The accident hap-
pened a minute and a half after we left him. He had
to go through one more car after we left. I did not hear
the whistle." The wind was blowing in appellant's face
as he went east, with his back to the engine. The train
was going down grade after leaving Truckee. The snow-
sheds were built of substantial material, but not high
enough for the plaintiff to ride erect upon the refriger-
ator cars while passing through them. These sheds were
substantially built, several years ago, with reference to
the contour of the ground, the shape and slant of the
mountains, and curves of the road. Respondent con-
tends that there are nearly 40 miles of these snowsheds
constructed upon this road in the Sierra Nevada moun-

tains, near the locality of this accident. The evidence shows that there are many sheds below Truckee and Summit.

In viewing this question, it is proper for the court to take into consideration the history and geography of the country, the monuments constructed by nature, and the rugged formation of the Sierra Nevada mountains near where this accident occurred. Negligence consists in the want of that ordinary, reasonable care, which would be exercised by a person or ordinary prudence, under all the existing circumstances, in view of the probable danger and injury. So ordinary care is due precaution against a danger likely to happen, and reasonably to be anticipated. Or, as Mr. Justice Swayne defines it in *Railroad Co.* v. *Jones*, 95 U. S. 439: "Negligence is the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation, or doing what such a person, under the existing circumstances, would not have done. The essence of the fault may lie in omission or commission." The law does not impose impracticable rules of duty, but is satisfied with what is reasonably fair under the circumstances. While the negligence of a railroad company may be the cause of an injury, yet if the injured party was careless himself; if his want of attention and care for his own safety contributed to cause the injury of which he complains, —he cannot recover. Justice Miller, in *Cunningham* v. *Railroad Co.*, 5 McCrary 471, 17 Fed. 882, carries the rule still further, and says: "For although the railroad company's negligence may be a cause, and probably a principal cause of this man's loss of life, yet, if he was so careless himself,—if his want of attention to his own safety contributed in any small degree to his death,— the railway company is not liable." In *Goodwin* v. *Railroad Co.*, 84 Me. 203, 24 Atl. 816, the court held, in a sim-

ilar case: "The danger of standing on the narrow plat-
form of a passenger car, while the car is moving with the
usual speed of railroad trains, is most conspicuous. No
prudent man, no man ordinarily mindful of his own con-
duct and of matters about him, would occupy such a posi-
tion. The greater the speed of the train, the more immi-
nent the danger in such a place. Thoughtful people
shudder instinctively when they see a person taking such
risks. Curves are necessarily frequent on railroads in
Maine,—a fact well known to all, and a fact which makes
the riding on the platform of a car most perilous. The
knowingly incurring such an imminent, visible peril, the
choosing to ride in such a conspicuously dangerous place,
must be held by all reasonable people to be recklessness
in a high degree. The danger, the chance of injury, is
visibly imminent and great. No man of reason can fail
to apprehend it. No prudent man would fail to avoid it.
There seems to us no doubt, no room for debate or ques-
tion, upon this proposition." In the case referred to, the
conductor took the passenger's ticket on the platform,
and did not give him a seat in closely-crowded car, on a
hot, disagreeable day, and did not object to his riding on
the platform. The court said: "All these circumstances
may have made it more agreeable to ride on the platform,
in the open air, than to stand inside the hot, crowded car;
but they did not in the least lessen the danger, nor the
appearance of danger, in so doing. That Goodwin was
not ordered off the platform could not have led him to
believe that it was safe there. He needed no warning of
such danger. He knew the place for passengers was
inside the car. The discomfort of the hot and crowded
car did not make it any more prudent for him to ride out-
side upon the platform. Within the car, with all its dis-
comfort, was safety. Without the car was obvious peril.
The safe path is often more narrow and difficult than the

way which leads to destruction, but no man is excused, for that reason, from seeking the one and avoiding the other." It is a general rule, and this court has held in the case of *Guibell* v. *Railway Co.*, 7 Utah 122, 25 Pac. 734, "that it is incumbent on the plaintiff to show that the injury of which he complains was caused by the negligence of the defendant, and that it did not arise from his own negligence or want of care. He cannot recover if he was negligent, because it cannot be said that defendant's negligence caused an injury which could not have happened but for his own want of care.

"Where, therefore, from the whole evidence on which the case rests, it appears that the plaintiff was wanting in prudence and care, or that he directly or proximately contributed to cause the injury he received, or that by the use of ordinary care and prudence he could have avoided the injury, the court, it is held, may rightfully instruct the jury, as a mater of law, that the plaintiff cannot recover, even though the defendant was guilty of negligence. And while the court should not invade the province of the jury, and pass upon the weight of the evidence, yet, where the jury have made a clear and unquestionable mistake of fact, or prejudices of the jury have so clearly controlled their mind as to find a verdict where there is no evidence upon which to base it, the appellate court has the right, and it is its duty, to rectify the wrong done, and to set aside the judgment upon which such erroneous judgment is based, and grant a new trial. Where there is no conflict of evidence whatever upon the questions of fact presented, and such evidence falls short of making a *prima facie* case for the plaintiff, it is then the duty of the trial court to take the case from the jury. The case, however, should be a clear one, to justify the court in exercising this responsibility; but when the necessity exists the court should not shrink from the

responsibility. The question of negligence, diligence, or reasonable care is one of mixed law and fact, and seldom exclusively one of fact. Jurors may act upon a question only where there is some evidence tending to prove it. The relevancy and admissibility of evidence, and the tendency to prove diligence or negligence, or whether there be any such evidence, is a question of law, to be determined by the court; and where the facts are found or admitted, or where there is no dispute or question as to what the facts are, and if they be such that all reasonable men would be likely to draw the same inference, or in a case where there is no evidence tending to prove a case of negligence, the question is one of law." "While there may be some difficulties in the way of this rule in the same cases, yet the courts are held and bound judicially to know that absence of due care is not due care, and that no care is not due and reasonable care; that the absence of proof of negligence does not prove negligence. Jurors should act upon the question of diligence, negligence, and reasonable care, when there is evidence in the case to prove it. If there be no evidence, there is nothing before them upon which to find negligence, diligence, or care." *Robinson* v. *Railroad Co.* (Com. Pl.) 25 N. Y. Supp. 91; *Fitzgerald* v. *Paper Co.*, 155 Mass. 155, 29 N. E. 464; *Railroad Co.* v. *Miller*, 25 Mich. 274; *Conely* v. *McDonald*, 40 Mich. 158; *Carver* v. *Plank-Road Co.*, 61 Mich. 584, 28 N. W. 721; *Quibell* v. *Railway Co.*, 7 Utah 122, 25 Pac. 734.

The passenger is bound to conduct himself, while upon the train, in a prudent manner; and if he unnecessarily or negligently expose himself to danger, and as a consequence is injured, he cannot recover redress from the company, although it was negligent, because in such a case the fault was mutual. *Brennan* v. *Railroad Co.*, 45 Conn. 284; *Willis* v. *Railroad Co.*, 34 N. Y. 670; 2 Wood,

Ry. Law, p. 1083; Patt. Ry. Acc. Law, p. 282; *Railroad Co.* v. *Langdon*, 92 Pa. St. 21; *Goodwin* v. *Railroad Co.*, 84 Me. 203, 24 Atl. 816. The fact that a passenger did not know that his act was careless will not avail him, as he was bound to know. Passengers passing from car to car unnecessarily do so at their own risk, and are bound to know that it is dangerous to do so. *Railroad Co.* v. *Henderson*, 43 Pa. St. 449; *McIntyre* v. *Railroad Co.*, 37 N. Y. 287. If the facts are undisputed and fail to show that the plaintiff was in the exercise of due and reasonable care at the time of the accident, it is the duty of the court to instruct the jury that he cannot recover. *Gavett* v. *Railroad Co.*, 16 Gray 501; *Todd* v. *Railroad Co.*, 3 Allen 18; Patt. Ry. Acc. Law, 285; *Banking Co.* v. *Letcher*, 12 Am. & Eng. R. Cas. 115; *Railroad Co.* v. *Aspell*, 23 Pa. St. 147; 2 Wood, Ry. Law, p. 1121. One who voluntarily assumes a position of danger, the hazards of which he understands and appreciates, cannot recover for an injury from a peril incident to the position of danger known to him, and the court should take the case from the jury. *Robinson* v. *Railroad Co.* (Com. Pl.), 25 N. Y. Supp. 91; *Fitzgerald* v. *Paper Co.*, 155 Mass. 155, 29 N. E. 464.

Under the facts stated, was it negligent for the defendant to construct its snowsheds so as not to admit the plaintiff to ride on the tops of the refrigerator cars? And was it also negligent to switch the refrigerator cars between the caboose and the sheep cars? We will consider these questions together. The court, in its opinion, does not find the respondent negligent in the construction of the sheds, but holds that it is inclined to that view. In this I cannot agree. One knowing the danger from the negligence of another, and who understands and appreciates the risk therefrom, and who voluntarily exposes himself to it, is precluded from recovery for any injury

which results from the exposure. *Fitzgerald* v. *Paper Co.*, 155 Mass. 155, 29 N. E. 464. The case of *Railway Co.* v. *Carpenter*, 5 C. C. A. 551, 56 Fed. 451, is relied upon to sustain appellant's position. That case is based upon a different state of facts from that surrounding this. In that case the injured party had no knowledge of the existence of the bridge, or of its dangerous character, or of his close proximity to it. In this case the plaintiff had worked for the Company on its railroad, at and about Truckee, which is about three miles east of the place of the accident, for 11 months prior to the injury. He had passed over the road twice, in passenger cars, before the injury. He had passed under one snowshed, and knew there were plenty of them between Truckee and Summit, which was the next stopping place, and he must have known that the train would arrive in Summit within half an hour. He must be held to have had actual knowledge of the existence of the snowsheds, and of their dangerous character to one riding on the tops of the cars. In that case the bridge was an isolated structure, located upon an open, well-inhabited country. In this case the snow-sheds were located, one following another, on the top of the Sierra Nevada mountains, away from habitation, over the curving, winding track of the road along the precipitous sides of the mountains, and over ravines made almost inaccessible by nature, covering an extent, as counsel claims, and as the court must presume, from the geography of the country and from the proof, of nearly 40 miles, and so constructed along the mountain sides as to protect the track and passengers from the avalanches of rock, ice, and snow slides during and following the fearful storms prevalent in such a mountain desolation. In that case the owner was in charge of the cattle cars, and there were no doors provided for the attendants to pass from one car to enter into another. The accident

occurred at 3 o'clock p. m. on a pleasant day, with no wind or storm in progress. In this case the accident occurred at night, in the midst of a blizzard in the mountains, where the plaintiff was in care of sheep placed in sheep cars with openings in each end, and constructed purposely so that the attendant could pass from one car to another without climbing on the top of the car, or exposing himself to danger. Plaintiff knew the refrigerator cars were placed between the caboose and the sheep cars before he left Truckee, and objected to having them thus placed to prevent ingress to the caboose. The construction and location of the cars were a notice to him that any other mode of riding was dangerous. Cattle cars were not so constructed as to admit the attendants, on account of the danger from the cattle, but this would not apply to sheep. By the refrigerator cars being placed where they were, he knew he could not pass over them without danger, in that country. In that case the evidence tends to show that the plaintiff had the right to be on the top of the car when he was struck by the overhanging bridge. In this case the plaintiff sought the tops of the cars as a means of more conveniently returning to the caboose, with a knowledge that the refrigerator cars were placed between the sheep cars and the caboose, and that the refrigerator cars were higher than the sheep cars, and without openings in the ends, and knew that he had assumed a place of danger. Both himself and his companion, Nelson, knew that these snowsheds were there, and plenty of them, at the time. He knew that there was a fearful wind and snow storm prevailing in these mountains at the time,—so fearful that the snow nearly blinded them; and they did not stop to look back to discover the sheds, for fear of falling of. It was then growing dark. He knew at the time he was in a dangerous position, and if he looked back he could have seen the

sheds before reaching them. He knew Summit was the next stopping place. As a railroad man, he should be held to know that the sound of the whistle for the snow-sheds could not be heard 25 car lengths during that fearful storm, when the wind was blowing the sound from him, and yet the plaintiff underwent all these hardships and dangers simply because it was cold and disagreeable in the sheep cars, and his presence there might disturb the sheep. The distinction between the facts in the case referred to in 5 C. C. A. 551, 56 Fed. 455 (*Railroad Co.* v. *Carpenter*), and the facts of this case, are so different that it cannot be taken as authority in this case.

But the appellant contends that he has proved a custom among stockmen to ride on the tops of the cars while having care of stock. Let us see if such proof is shown to apply to this mountainous country, when sheep are being shipped, and, if it was the custom, then should the respondent still be held liable. Nelson testifies that "he knew the custom of stockmen, shipping cattle and sheep, about going into cars and attending to them, and walking back over the tops of the cars to reach the caboose over that road." "It was in handling sheep that we got on the cars after attending to them." "It is customary, in handling sheep, to go through the cars." "The cars are fixed so you can go through the end doors." "The country where this snowshed is built is on the side of a mountain." "I never made a careful examination of this snowshed, but have looked at it as I passed on stock and passenger trains, and that is all I know about it." "They have wind and snow storms in that region, and the snow is very deep." Plaintiff testified that "he knew the custom of the company in permitting men in charge of sheep and cattle to attend them, and walk back over the tops of the cars to the caboose." "In shipping sheep, we always have the cars so we can pass through them,

from one car to another, without getting on top." Plaintiff was asked to describe the custom in shipping sheep, and he replied: "Well, in shipping sheep they always have cars so they can pass through them, from one end of the car to the other, without getting on top; but with cattle it is different. They use prod poles to stir them up." "This was done frequently while I was working for the company." Plaintiff did not work on the road west of Truckee, where the accident occurred, and knew nothing of the custom west of Truckee. Pascal and Foster testified on direct examination, in substance, that it was customary for stockmen to walk back over the tops of the cars to the caboose, when caught out, and the train started, while attending stock, and further stated that they did not know whether it was customary for stockmen to go into the cars to attend to stock, and return over the tops of the cars to the caboose, while the train was in motion, in shipping sheep, and that they did not ship sheep on the railroad. This testimony is exceedingly meagre, unsatisfactory, and uncertain, so far as it tends to show the custom, with the knowledge of the company, of stockmen in shipping sheep on this mountain road west of Truckee, and does not nullify that settled rule of law which will not permit a custom, when clearly shown, to excuse a person from having been negligent, any more than it will justify him in committing a crime. Even if the evidence of a custom was reasonable, general, legitimate, and certain, it would not establish a *prima facie* case, nor refute or justify a clear case of gross or contributory negligence. The only effect such evidence could possibly have, if made reasonable, general, definite, and certain, would be to lessen the probability of appellant's contributory negligence. The witnesses say that they knew the custom, but it does not satisfactorily appear that plaintiff knew it, nor what that custom

was when applied to respondent's road and to shippers of sheep, except that in the shipments of sheep the attendants pass through the end doors from car to car. The purpose of constructing end doors in cars was doubtless to remove the danger attending the passage over the tops of the cars. While this is true as to sheep, the custom may still remain as to cattle shipments, about which the witnesses intended to testify. It is certainly not clear that the custom, if it was such, applied to shipments of sheep in cars provided with end doors, over this road, if the custom existed at all. If the custom existed, it does not appear to be reasonable, certain, general, and uniform, when applied to the facts as shown by this record, in shipments of sheep. The snowsheds were constructed many years ago, at a vast expense, in this barren, desolate mountain waste, and their existence and usefulness have become a matter of history. Their construction must have been, of necessity, of various heights and lengths, suitable to the contour of the country, and built so as to slope with the ground, and thus become of use to carry off snow drifts, snow slides, debris, and rock, and thus make it possible to cross the mountains with reasonable safety. The reason which may prompt the asserted rule as to the height of covered bridges in accessible and less dangerous and level localities, if it exists, cannot and should not apply to these structures in the Sierra Nevada mountains.

The appellant was a passenger of mature years and understanding. He had worked within two or three miles of the snowshed in question for several months. He was a railroad man by occupation. He knew the location of these sheds, and that there were plenty of them in that locality. He knew, or should be held to know, that the next station was but seven or eight miles distant. He knew the refrigerator cars were between him and the

caboose. It was growing dark. He had voluntarily placed himself in a dangerous position, where he says he did not, and from the circumstances he must have known he would not be liable to, hear the whistle of the engine for the sheds that he knew were there. He did not look for the danger that he knew existed in the presence of the sheds. Yet in midwinter, and when it was getting dark, in the midst of a mountain blizzard, at a time when it would be almost unsafe to remain upon solid ground; at a time and place which he says he knew was dangerous and unsafe, and when the conductor did not know he was on top of the car; at a time when the wind was blowing, and the snow was piling up around him, so he could scarcely stay on the car, and he was nearly blinded,—he left a safe place in the sheep car, and after passing under one snowshed, and without looking for the next, in utter disregard for his own safety, he undertook to pass over the refrigerator cars to the caboose, simply because it was cold and not pleasant in the sheep cars, and by remaining there he might disturb the sheep, and that by going over the cars he could get back to the caboose more quickly. It is difficult to imagine a more daring, reckless or negligent act on the part of any sane man. Such conduct constituted more than contributory negligence. It was manifestly the grossest negligence. These acts of extreme folly, rashness, and gross negligence I cannot denominate reasonable. I cannot say he was in the exercise of reasonable care, in view of the probable and apparent danger, under the circumstances in proof. He did not do what an ordinarily prudent man would have done under like circumstances. All reasonable men could not agree otherwise than that appellant's conduct was grossly negligent and wholly inexcusable. The proximate and immediate cause of the injury complained of is directly traceable to the want of ordinary care, caution

and manifest reckless conduct of the appellant in the face of known danger volutarily assumed.

Respondents allege that the refrigerator cars were empty. The evidence does not show they were loaded cars, or were not empty. If this were so, or if they were lighter cars, as they appear to have been, common prudence for the safety of passengers and trains would seem to dictate that in going up and down the mountain sides, upon a curved and winding track, in such a country as this, the heavily loaded cattle and sheep cars should be placed next to the engine, and the light or empty cars placed in the rear, for safe handling. The managers of lines of railroads could not safely conduct their business and run their trains if it must be left to the demand or judgment of every inexperienced shipper over their lines where their product must be carried in their trains, at a risk on the part of the company of being held negligent for the failure to observe or decline such demand. Under the circumstances, there was no negligence in placing the refrigerator cars in the rear of the train. It would have been negligence on the part of the company to place the light cars next to the engine. A reckless or inexperienced passenger should not be allowed to control or manage the manner of making up a train, in opposition to the skilled and experienced judgment of the officers and employés of the company. While railroad companies should be held to a strict accounting for their negligence which causes injury to their employés without their fault, I cannot concur in the opinion of this court that the same rule should apply to passengers, such as the appellant was, when they assume risks to life and limb, and recklessly walk on the tops of freight cars in passing through a mountain country, at such a time and under such circumstances as this record presents. I am of the opinion, also, that the snowshed, in the locality shown by the

record in this case, and which we must also presume, from the geography, history, and natural monuments of the country, to exist, was constructed with reasonable safety, considering the purpose for which it was constructed, and the mountainous country in which it is located, and that it does not lie with the appellant to hold the respondent liable for his own rash, negligent, heedless, and reckless conduct in experimenting with his own life as he is shown to have been done on the night in question. Appellant voluntarily assumed a position of known danger, and, appreciating the risk therefrom, he voluntarily exposed himself to it, and he was precluded from a recovery for an injury which resulted from the exposure caused by his own negligence.