STATE, RESPONDENT, v. WILLIAM McCOY, APPELLANT.

ABORTION—PHOTOGRAPHS—EXPERT TESTIMONY—SCOPE OF RE-EXAMINATION OF A WITNESS—INSTRUCTIONS.

1. A photograph, taken two years before the death of the person photographed, but identified by the parents as an accurate photograph of their daughter just before her death, may be shown to a witness who saw the deceased under peculiar circumstances just before her death, for the purpose of identification.

2. It is competent for a doctor giving expert testimony to give as his opinion, from an examination of the body after death, and from his previous knowledge of the deceased, that it was not necessary to produce an abortion in order to save the life of the deceased.

3. When new subject-matter is called up for the first time on cross-examination, by defendant's attorney, for the purpose of discrediting a witness, the prosecution are entitled to go into the matter upon a re-examination of the witness.

4. Instructions to a jury must be considered together, and an omission to state fully the law in one part of the instructions, where the omission is fully and accurately supplied in the instructions which follow, which were favorable to defendant, does not constitute reversible error, unless from the whole charge it is reasonable to believe the jury were misled.

(No. 792.   Decided June 9, 1897.)

Appeal from the Third district court, Salt Lake county. Hon. Ogden Hiles, *Judge.*

Defendant was convicted of the crime of abortion and sentenced to eight years' imprisonment. From the judgment he appeals. *Affirmed.*

*Zane, Moyle & Costigan,* for appellant.

*A. C. Bishop, Atty. Gen.,* and *Benner X. Smith,* for the state.

MINER, J.:

The defendant, impleaded with others, was indicted and convicted of having, on the 19th day of February, 1896, at Salt Lake City, Utah, procured an abortion on one Evelyn Bonnett. Evelyn Bonnett died from the effects of the abortion a short time after it was committed. The deceased resided at Provo at the time, and came to Salt Lake City, where, as the prosecution claimed, she was operated upon by defendant. The mother and sister of the deceased were called as witnesses by the prosecution, and identified a photograph of the deceased, taken about two years prior to her death, as a good photograph of the deceased, and that it was as natural a representation of the deceased as it could be; that the deceased looked like the picture ten days before her death,—the time she left Provo. The photograph was offered in evidence for the purpose of identifying the deceased. The defendant objected to the introduction of the photograph as immaterial and incompetent. Dr. Collins was called, and gave a minute description of a woman seen in the defendant's office on the day in question, describing her face, features, height, age, and dress, and stated that he would recognize her again. He testified that she came down from defendant's office, and seemed in pain, and that he heard screaming in the office just before she came downstairs following the defendant. The photograph was

then shown to witness, under the objection that it was immaterial, irrelevant, and incompetent, and that the picture was taken too long a period prior to the time the witness saw her. The objection was overruled. The witness identified the photograph as resembling the woman he saw at the defendant's office. Other evidence was introduced tending to show that the deceased was at the defendant's office at the time in question, and that the defendant produced a miscarriage upon her.

We are of the opinion that the photograph was properly introduced in evidence. The witness saw a young woman in defendant's office at the time in question, under the peculiar circumstances stated. He did not know her name, but noticed her so critically that he would know her again if he should see her. He was able to give a minute description of the woman he saw, but such description, however minute, could not carry to the minds of the jury so perfect a representation of the woman as an accurate photograph would present. The photograph, when shown to be a correct likeness of the deceased, served the purpose of locating her at defendant's office, and as identifying her with more accuracy than any description from the witness could do, and thus aid the jury in coming to a more correct conclusion than they otherwise could. In the case of *Dederichs* v. *Railroad Co.*, 14 Utah, 137, this court held that the law was well established that photographic scenes are admissible in evidence as appropriate aids to the court and jury in applying the evidence, whether it relates to persons, things, or places, provided such photographs are shown to be correct. In the case of *People* v. *Durrant* (Cal.) 48 Pac. 83,—a case where the question at issue was very similar to the one here presented,—a photograph of the deceased, taken three years before the

date of the testimony, was offered in evidence, and the court held the photograph admissible on the grounds decided by this court in the above-mentioned case.

Dr. Allen, a physician, was called by the prosecution, and gave testimony tending to show that he resided in Provo, and knew the deceased. Had met her frequently, and saw her five weeks prior to her death. At this time she appeared to be in good health. That he made a post-mortem examination, and gave it as his opinion, from a careful examination of the body, that a miscarriage had been produced upon the deceased by artificial means, stating in full the reasons for his opinions. He gave it as his opinion, from an examination of the body, and his previous knowledge of the deceased, that it was not necessary to produce an abortion in order to save the life of the deceased. The last testimony was objected to as incompetent on the ground that the witness' knowledge of the deceased was not sufficient for him to give an answer intelligently. We are of the opinion that the testimony was proper. The reasons for the opinion were given with great detail. The witness was an expert, and the weight of his testimony was for the jury to consider.

Defendant's counsel, on cross-examination of F. J. Collins, a witness for the people, drew out for the first time the fact that Mrs. Stansfield died from the effects of an operation, what the operation was for, who assisted in it, and whether the witness produced an abortion upon her, and attended her in her last sickness. On redirect examination by the prosecuting attorney the witness stated that he had a conversation with Dr. McCoy about this operation on Mrs. Stansfield, whereupon witness was requested to state the conversation. The witness replied: "I asked him if he performed the operation. He said, 'Well, by God, if I did, she needed it.'" The ques-

tion was objected to, and an exception taken. This subject was new matter, called out for the first time on cross-examination for the evident purpose of discrediting the witness. The subject having been opened by the defense, the prosecution was entitled to go into the matter upon a re-examination of the witness.

An exception was taken to the charge of the court because it ignores the fact that it was necessary to prove that a miscarriage (not the use of an instrument) was not necessary to save the life of the deceased. Upon this subject the court instructed the jury as follows: "To constitute the offense charged in the information, it must appear from the evidence given before you, to your satisfaction beyond a reasonable doubt: First, that the woman Evelyn Bonnett was with child; second, that some instrument was used upon her with a design to procure a miscarriage of the woman; that the use of such instrument upon her was not necessary to save her life. If, in this case, you believe from the evidence given before you, beyond a reasonable doubt, that the woman Evelyn Bonnett was pregnant, and that the defendant William McCoy, on or about the 18th day of February, A. D. 1896, at the county of Salt Lake, state of Utah, either provided or supplied the woman with any instrument to be used by her upon herself, or that he himself used an instrument upon her, with the intent thereby to procure the miscarriage of the woman, and that a miscarriage was thereby in fact produced, and that the producing of such miscarriage was not necessary to save her life, you should find him guilty as charged in the information." That part of the charge referred to was not critically accurate. But the court charged the jury in that connection: "That if the defendant used an instrument upon her with intent thereby to procure the

miscarriage of the woman, and that a miscarriage was in fact thereby produced, and that the producing of the miscarriage was not necessary to save her life, you should find the defendant guilty as charged." The same proposition was fairly contained in the other part of the instructions given by the court. The instruction that, in order to convict, the jury must find that the use of the instrument upon her was not necessary to save her life, is not strictly in contradiction with the proper instruction that the producing of such miscarriage was not necessary to save her life, under the proof that the instrument was used for the purpose of producing a miscarriage. The giving of the first instruction does not necessarily contradict the latter. The giving of both instructions threw an additional and unnecessary burden upon the prosecution, and rendered the instructions more favorable to the defendant than they otherwise should have been. The jury could not have been misled by the instructions when taken together. Instructions must be considered together. An omission to fully state the law in one part of the instructions, where the omission is fully and accurately supplied in the instructions which follow, does not constitute reversible error, unless when from the whole charge it is reasonably apparent the jury were misled. *State* v. *Maloy*, 44 Iowa 104; *Railway Co.* v. *Ingraham*, 77 Ill. 309; *People* v. *Cleveland*, 49 Cal. 577; *Martin* v. *Hill*, 3 Utah 157; *Hamer* v. *Bank*, 9 Utah 215.

On motion for a new trial several affidavits were filed, tending to show that a rubber catheter and metallic sound were found in the room of the deceased, Evelyn Bonnett, by her landlord, on the 18th day of February, 1896, about the time the abortion was alleged to have been committed, and that witness had not communicated the fact of finding such instruments, except as to the

finding of the catheter, until after the trial. Another witness sold to Sims Duggins, the co-defendant, a speculum, in 1895, several months before the occurrence complained of. The motion for a new trial was overruled, and an exception taken. Under the facts of this case we cannot discover any good reason for disturbing the order of the trial court in refusing a new trial. The facts alleged are in part remote, and, in the light of the facts shown, could scarcely have affected the verdict, if proven. The finding of the catheter was known at the time of the trial, and, if important, should have been shown. The purchase of the speculum in 1895, by Duggins, several months before the operation, and probably before the pregnancy of the deceased, would not tend to show that it was purchased for the purpose suggested. Upon the whole record we find no reversible error. The judgment of the district court is affirmed.

Zane, C. J., and Hart, J., District Judge, concur.