E. W. REESE, ADMINISTRATOR, APPELLANT, *v.* MORGAN SILVER MINING COMPANY, RESPONDENT.

INJURY TO EMPLOYÉ—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

1. Deceased came to his death while descending defendant's mine. A nonsuit was granted on evidence respecting the manner of his descent, which the court regarded as the cause contributing to the loss of his life; but, as there were reasons and theories upon which such a manner of descent might be reconciled, not only with reasonable care, but safety, on the part of the deceased, and as there was further evidence to show gross negligence on the part of the defendant in not repairing and keeping in saf: condition the ladder upon which deceased descended, it was error in the court to grant a nonsuit.

2. When a given state of facts is such that reasonable men might fairly differ upon the question as to whether there was contributory negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusions from them that the question of contributory negligence is considered one of law for the court.

(No. 822.   Decided July 2, 1897.)

Appeal from the Third district court, Salt Lake county. A. G. Norrell, *Judge.*

Action by E. W. Reese, administrator of Meredith Reese, against the Morgan Silver Mining Company. *From a judgment for defendant, plaintiff appeals.   Reversed.*

*Powers, Straup & Lippman,* for appellant:

Cited:   *Olsen* v. *Ry. Co.,* 9 Utah 129; *Franklin* v. *Ry. Co.,* 83 Cal. 63; *House* v. *Meyer,* 100 Cal. 592; *Ry. Co.* v. *Peter-*

*son,* 55 Fed. R. 940; *Ry. Co.* v. *Jarvi,* 53 Fed. R. 65; *Owens* v. *Railroad Co.,* 26 Atl. 748; *Richmond & D. R. Co* v. *Powers,* 149 U. S. 43; *Baltzer* v. *Ry. Co.,* 83 Wis. 459; *Huntress* v. *Ry. Co* , 34 Atl. 154; *Beaver* v. *Ry Co* , 43 Pac. 1136; *Bowers* v. *Ry. Co.,* 4 Utah 215; *Reddon* v. *Ry. Co.,* 5 Utah 344; *R. R. Co.* v. *Steinley,* 17 Mich. 99; *Ingerman* v. *Moore,* 90 Cal. 410; *Gisson* v. *Schwabeeker,* 99 Cal. 419; *Piddock* v. *Ry. Co* , 5 Utah 612.

*Moyle, Zane & Costigan,* for respondent:

*Dougherty* v. *West Superior Iron & Steel Co.* (Wis.) 60 N. W. 274; *Washington, etc., Railroad Co.* v. *McDade,* 135 U. S. 570; *Senior* v. *Ward,* 10 Morrison Min. Rep. 651; *Reddon* v. *Railway Co.,* 5 Utah 344; *Diamond Plate-Glass Company* v. *Dehority,* 40 N. E. Rep. 681; *Southern Pacific* v. *Seley,* 152 U. S. 145; *Rooney* v. *Sewall & Day Cordage Co.,* 36 N. E. Rep. 789; *Writt* v. *Girard Lumber Co.,* 65 N. W. Rep. 173; *Malm* v. *Thelin,* 66 N. W. Rep. 650; *Klatt* v. *N. C. Foster Lumber Co.,* 66 N. W. Rep. 791; *Chicago B. & Q. R. Co.* v. *McGinnis,* 68 N. W. Rep. 1057; *Nuss* v. *Rafsnyder* (Pa.) 35 Atl. 958, *Bonnet* v. *Galveston, H. & S. A. Ry. Co.,* 31 S. W. Rep. 525.

MINER, J.:

This appeal is taken from a judgment of nonsuit. Plaintiff's intestate was in the service of the respondent as a common miner in its mine at Park City, and was killed by falling from a ladder extending down the shaft in its mine, the rungs of which had, as alleged, become rotten, dangerous and unsafe. It appears that the mine was worked through a shaft and incline. The incline ran down at an angle of 36 to 40 degrees for the first 100 feet, and then almost perpendicular for the next 100 feet, and at an angle of about 80 degrees for the next 100 feet, making an incline of about 300 feet. Reese,

the deceased, had worked there in the shaft for 10 days. Plaintiff's witnesses say in going down and returning the men used a ladder. This ladder was built on mud sills. Then came the rungs of the ladder, and the stringers to which the rungs were nailed. The steps or rungs of the ladder were nailed on underneath,—the ladder was upside down, so to speak. The ladder was laid with the rungs down, so that the bucket could be hauled up along the stringers. Down the incline, at a point where it turned steeper, there was an iron roller over which ran the cable that pulled the bucket. Reese used this ladder, and had opportunity of becoming acquainted with its condition, so far as he could see with a candle going up and down to work. After the accident, there was one broken rung below where the iron roller was, and where the incline turned down very steep. This rung was gone, and another one was hanging by one nail on one side. There was one rung in the ladder between the two missing ones. Prior to this accident, this ladder was out of repair, and the superintendent had been notified of its dangerous condition several times some two or three weeks before the accident. He was told that some one would get hurt. He replied that he would have it attended to, but it was not repaired. The ladder, before the accident, was badly worn, a number of steps had been broken off of it, and it was patched up in different ways, and it was almost impossible to get a hand or foot hold anywhere on it. The bucket slid on it, and the dirt fell very often out of the bucket, and in being dragged over the rungs the bucket caused the rungs to be worn off. The ladder was so filled with dirt and mud that a person could not take hold of it. In many places it was necessary to take a candlestick and dig in to get any kind of a hold. Many of the rungs were nearly worn

in two by the bucket. The ladder and stringers were rotten, and the sills would not hold the nails to the rungs, because they were so rotten. This was its condition the morning before the accident. At the time of the accident, Reese, the deceased, and several other workmen, started down the ladder. Reese was ahead, and went down the ladder with his back to it. Witnesses could not tell what position he was in, whether facing the ladder or not, when his light went out. He went 15 or 20 feet with his back to the ladder. The rungs were out just below the iron roller five or six feet. The incline is 75 to 80 degrees,—almost perpendicular. At the top of the ladder at the first incline a person could walk with his face from the ladder, if so inclined, and then turn around afterwards. Deceased fell $1\frac{1}{2}$ minutes after he started. He went faster than any of the workmen. His companions requested him not to go so fast, for fear rocks would fall. At this time Reese was near the iron roller, 40 to 60 feet ahead of his fellow workmen, and it was at this time that his light went out, and it was the last time he was seen alive. He was afterwards found dead at the foot of the shaft. No one could tell where he fell. The rung was out of the ladder just below the iron roller, and the ladder was found to be in a very rotten and defective condition after the accident, as it was before the accident. Deceased was 21 years of age, had no mother, wife, or children, but contributed towards the support of his father. Other formal proof was introduced. At the close of plaintiff's case the court, on motion of defendant, granted a nonsuit, on the ground that the plaintiff contributed to cause the injury.

The question of negligence and contributory negligence, as affecting the right of recovery, such as is presented by this appeal, has often been presented and

passed upon by this court. It appears from the testimony that the first 100 feet was on an incline of 36 to 40 feet; that deceased started on ahead of his two companions, walking with his back to the ladder, and continued to walk in this way for a minute or two for 15 or 20 feet; that one could walk down the first 100 feet of the ladder with his back to the ladder, if so inclined, on account of its gradual descent, and could then turn around, and walk with his face to the ladder. The iron roller was 100 feet down from the starting point. At this point the incline was 75 to 80 degrees,—almost straight down. The rungs of the ladder were out 5 or 6 feet below the roller. The light that deceased held went out near the roller, but witness could not say whether deceased was going down with his back to the ladder or not when his light went out. Whether in going down the ladder rapidly, with his back to it, was negligence, depended upon the agility, dexterity, and care exercised by the deceased, the condition of the ladder, and whether he was familiar with that manner of descent. One person might be able to descend a ladder with agility and safety with his back to it, and that might be the only convenient and safe way he could descend it, while it might be dangerous and negligent for another man to make the descent in that manner. A left-handed man might do a certain act without being negligent, while it might be negligence in a right-handed man to attempt to do the same thing left-handed. What might be deemed ordinary care and prudence in one case may, under different surroundings and circumstances, be gross negligence. The jury might have found that it was the proper way for deceased to descend the ladder. The solid heel might take better hold of the rung, the rear of which was filled with dirt, than the more supple toe

of a shoe. The proof shows that back of the rungs the dirt was packed so hard that it was necessary to get a pick, and dig it out, before one could get a hand hold of the rungs. Under these circumstances, could he have gone down the ladder, facing it, as safely as with his back to it? When the deceased reached the roller and the steep descent, he might have turned, facing the ladder. There is no proof that he did not. There is proof that he could do so. The jury might have found that he did. Negligence cannot be presumed; it must be proved. The court cannot presume that he went down negligently, in the absence of proof, for the presumption would be that he went down using due care. Prior to the accident, there were no broken rungs on the ladder. After the accident, a broken rung was found hanging by a nail on one side of the ladder, next but one above another one broken. In descending the ladder, using due care, deceased may have stepped upon and broken the rung found hanging by a nail, and then have fallen to his death. This theory is reasonable at least. This rung was in before deceased went down. It was found broken after he went down. Who broke it? The jury might have found that the deceased broke it without knowledge of its defective condition. There is no proof that the deceased knew of these particular rungs being defective. There is proof that the defendant did know that the whole ladder was rotten and dangerous to life before the deceased went down it to his death. Why should not the question of contributory negligence have been submitted to the jury? No one saw the deceased below the roller. No one could tell how he descended the ladder below the roller. We have no right to presume that he was negligent at this point, in the absence of proof; and, as we have seen, the proof does not necessarily warrant that presumption.

As we have said, that which amounts to negligence in one person might not be so in another, because the agility, dexterity, caution, skill, and the surrounding circumstances of the one might differ from that of the other. The question of negligence or the want of it in such cases may depend, not upon one fact alone, but upon all the facts and circumstances of the case. It is made to appear from the testimony that the first 100 feet was on an incline of 36 to 40 degrees, and that a person could walk down it face foremost, and when he got to the roller he could change. It does not appear from the testimony that the deceased was on this 100 feet when he fell from the ladder; nor does it appear that he was walking with his face from the ladder when he did fall; nor does it appear that in walking down this first 100 feet he was not exercising such due and reasonable care as a person in his situation would ordinarily use with safety. How the deceased went down the ladder, if he did so, below the roller on the steep incline, where the two rungs were gone, no one knows. This incline was almost perpendicular. It will not be presumed without proof that the deceased did a foolish, criminal act, by attempting to destroy his own life. Prior to the time of the accident, the ladder was out of repair; the rungs were badly worn, and some of them were broken off. It was so rotten that nails would not hold the steps or rungs onto the stringers securely. It was apparent that some one would get hurt unless it was repaired. These facts concerning the condition of the ladder were communicated to the superintendent before the accident, and he, recognizing its bad and dangerous condition, promised to have it fixed, but failed to do so. If the testimony as to the condition of the ladder before the accident is true, it established a clear case of negligence on the part of the defendant.

The defendant was bound to furnish a safe ladder upon which the deceased could, while using reasonable care, descend to his labors in safety. This shaft was so dark that candles were required to be carried by each workman, and it could not be required or expected that in going up and down the ladder, with a candle, to his work, the deceased should investigate and discover the rotten, unsafe, hidden defects of the ladder. He was not employed for that purpose. Yet he was held bound to use his eyes and use reasonable care to avoid known dangers, and those which could be seen by the use of reasonable care. If he knew of the dangerous condition of the ladder which caused the injury, he should have exercised reasonable care in proportion to the danger. Whether Reese was negligent, and contributed to cause the injury complained of, as the case is here presented, was a question of fact for the jury to pass upon. When a given state of facts is such that reasonable men might fairly differ upon the question as to whether there was contributory negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusions from them that the question of contributory negligence is ever considered one of law for the court. This general rule, so often laid down by this court, following the case of *Railway Co* v. *Ives*, 144 U. S. 417, should always be kept in mind when considering these questions. *Wines* v. *Railway Co.*, 9 Utah 232. In the case of *Dederichs* v. *Railway Co.*, 13 Utah 34, this court said that:

"As the question of negligence and want of ordinary care on the part of the defendant was one of the facts for the jury to determine under all the facts and circumstances of the case, and under proper instructions from the court, so, also, the question as to whether or not the plaintiff, by his negligence and want of ordinary care and

caution, contributed to cause the injury, and whether or not there was negligence in the plaintiff which was the proximate cause of the injury, and whether or not the defendant, by the exercise of reasonable care and prudence, might have avoided the consequences of the plaintiff's negligence, if it was such, were likewise questions of fact for the jury to determine, under like rules." In *Saunders* v. *Pacific Co.*, 13 Utah 275, the court said: "Whether or not the appellant, under the peculiar circumstances of the case, was himself guilty of a want of ordinary care which contributed to the injury was a question for the jury, and not a question of law for the court." We are of the opinion that it was for the jury to pass upon the testimony, and determine from it the question of the negligence of the defendant in the matter complained of, and as to the contributory negligence of the plaintiff's intestate under the peculiar circumstances in proof. Each case involving this question must be weighed by such a reasonable standard of care as would be applied to the conduct of ordinarily prudent, reasonable men acting under like circumstances, taking into consideration the place, time, locality, and general circumstances surrounding the whole transaction. Under the facts and circumstances shown in this case, we are of the opinion that the court erred in taking it from the jury. *Dederichs* v. *Railway Co.*, 13 Utah 34; *Hall* v. *Railway Co.*, 13 Utah 243; *Smith* v. *Railway Co.*, 9 Utah 141; *Woods* v. *Southern Pac. Co.*, 9 Utah 146; *Wines* v. *Railway Co.*, 9 Utah 232; *Lowe* v. *Salt Lake City*, 13 Utah 91; *Saunders* v. *Southern Pac. Co.*, 13 Utah 275; *Railway Co.* v. *Ives*, 144 U. S. 428; *Handley* v. *Mining Co.*, 15 Utah 176.

The judgment of the district court is reversed, and a new trial granted.

BARTCH, J., concurs.