EMIL OLSON, MINNIE OLSON and BERTHA OLSON, Infants, by INGRID OLSON, their Guardian *ad litem*, and INGRID OLSON, Respondents, v. OREGON SHORT LINE RAILROAD COMPANY, a Corporation, Appellant.

No. 1352. (68 Pac. 148).

1. **Appeal: Bill of Exceptions: Time of Filing: Extended by Court: When Stricken Out.**

Under Revised Statutes, section 3286, requiring that a bill of exceptions shall be prepared and filed within ninety days after the entry of judgment, and section 3329, providing that when any act to be done under the Code relates to the pleadings or the preparation of bills of exceptions, etc., the time allowed may be extended by the court, a bill of exceptions will not be stricken out because not filed in ninety days, where the court extended the time for filing.[1]

2. **Railroads: Accident at Crossing: Negligence: Speed of Train: Evidence: Objection too General.**

In an action for death by collision on a crossing, an objection to evidence as to the speed of the train at the crossing, without stating any specified ground, is too general.[2]

3. **Same: Speed of Train: Evidence of: Admissible.**

In an action for death from a collision on a dark night on a crossing extensively used as a thoroughfare, and somewhat obscured by trees, preventing trains from being seen, evidence as to the speed of the train is admissible.

4. **Same: Opinion Evidence: Engineer Qualified.**

A witness experienced in railroading as an engineer, and who knew the train which caused a collision resulting in the death of plaintiff's intestate, and was familiar with the track and grade at the crossing, may give his opinion as to such grade, the dis-

[1]Gorringe v. Read, 24 Utah 455, 68 Pac. 147.

[2]Snowden v. Coal Co., 16 Utah 372, 52 Pac. 599; Culmer v. Clift, 14 Utah 291, 47 Pac. 85.

tance an object can be seen in front of a headlight, and the distance within which the train can be stopped.[3]

5. **Same: Sufficiency of Evidence: Rulings Based on: When Considered.**

Where a bill of exceptions does not purport to give all the evidence, the court can not consider rulings based on its sufficiency.[4]

6. **Same: When Proper to Deny a Nonsuit.**

Where, in an action for death caused by collision on a railroad crossing, the evidence of plaintiff is such that the court can not say that the injury was not caused by defendant's negligence, it is proper to deny a nonsuit.[5]

7. **Same: Cross-Examination: Proper to Show Bias or Interest of Witness.**

On cross-examination, questions tending to show interest or bias of the witness are admissible.

8. **Same: Questions as to a Conversation: Answers Excluded: No Reversible Error.**

There was no reversible error in permitting questions as to a conversation, where the answers were excluded.

9. **Same: Impeaching Questions: Foundations.**

When propounding impeaching questions to a witness concerning his prior inconsistent statements to another, the time, place and circumstances should be stated with reasonable certainty, in order to allow a proper foundation for the questions.

10. **Same: Instructions: Charge must be Construed as a Whole.**

In an action for death by collision on a crossing, an instruction predicating a recovery against defendant on certain negligent acts, without reference to contributory negligence, is not erro-

---

[3]Wright v. Pacific Co., 15 Utah 424, 49 Pac. 309; State v. Webb, 18 Utah 450, 56 Pac. 159; Konold v. Railway Co., 21 Utah 379, 60 Pac. 1021.

[4]Mining Co. v. Gisborn, 21 Utah 68, 59 Pac. 518; Cochrane v. Bussche, 7 Utah 233, 26 Pac. 294; Culmer v. Caine, 22 Utah 216, 61 Pac. 1008; Snyder v. Emerson, 19 Utah 321, 57 Pac. 300; Warner v. Association, 8 Utah 431, 32 Pac. 696.

[5]Reese v. Mining Co., 15 Utah 460, 49 Pac. 824; Wines v. Railway Co., 9 Utah 232, 33 Pac. 1042; Lowe v. Salt Lake City, 13 Utah 91, 44 Pac. 1050, 57 Am. St. Rep. 708; Dederichs v. Railway Co., 13 Utah 34, 44 Pac. 649; Saunders v. Pacific Co., 13 Utah 275, 44 Pac. 932.

neous, where the charge, construed as a whole, covered the questions of negligence and contributory negligence.[6]

(Decided March 26, 1902.)

Appeal from the Second District Court, Weber County.— *Hon. H. H. Rolapp,* Judge.

Action to recover damages arising from defendant's alleged negligence resulting in the death of August Olson. From a judgment in favor of the plaintiffs, the defendant appealed.

AFFIRMED.

*P. L. Williams, Esq., George H. Smith, Esq.,* and *J. W. N. Whitecotton, Esq.,* for appellant.

The trial court erred in permitting testimony to be given with reference to the speed of the train. Bunnell v. Rio Grande Western Railway Company, 13 Utah 314.

The lower court erred in admitting testimony with reference to the lower crossing at Harrisville, as to the amount of traffic that was in the habit of passing over it daily.

The testimony in this case shows that the lower crossing over which the deceased had passed before reaching the crossing where he was killed, was some 700 feet south of the one where the accident occurred. Morse v. Minneapolis & St. L. Rd. Co., 30 Minn. 465, 11 A. and E. Railroad Cases, 168; Pattee v. Chicago, Mil. & St. Paul Rd., 5 Dak. 267, 34 A. & E. Railroad Cases, 399; Missouri Pac. Railroad Co. v. Mitchell, 75 Texas 77, 12 S. W. 810; Stewart et al. v. Evarts, 76 Wis. 35; Pierce on Railroads, page 293.

---

[6] Hamer v. Bank, 9 Utah 220; 33 Pac. 941; Anderson v. Mining Co., 16 Utah 38, 50 Pac. 815; State v. McCoy, 15 Utah 141, 49 Pac. 420; Reese v. Mining Co., 17 Utah 496, 54 Pac. 759.

Where the court gives instructions correctly stating the law, and afterwards gives another, nullifying the first, the judgment will be reversed. Thompson on Trials, sec. 2326; People v. Hancock, 7 Utah 170; People v. Berlin, 10 Utah 39; People v. Campbell, 30 Cal. 312; Brown v. McAllister, 39 Cal. 573-577; People v. Anderson, 44 Cal. 65; Chidester v. Con. P. Ditch Co., 53 Cal. 56; Harrison v. Spring Valley Hydraulic Gold Co., 65 Cal. 376.

Defendant was entitled to a judgment of non-suit. The quantum of care to be exercised by a traveler at a railroad crossing is definitely prescribed by law, and a failure to observe any of the requirements so prescribed precludes his recovery, and under such circumstances the court should instruct as a matter of law that the plaintiff can not recover. Burgess v. Salt Lake City Rd. Co., 17 Utah 406; Silcock v. R. G. W. Ry. Co., 22 Utah 179; Herbert v. Southern Pac. Co., 121 Cal. 227; Salter v. U. & B. Ry. Co., 75 N. Y. 273; Ry. Co. v. Huston, 95 U. S. 697; Beech on Contributory Negligence, secs. 63, 83, 181 and 184; 3 Elliott on Railroads, secs. 1163 to 1166, and 1179; 2 Thompson on Negligence (Ed. of 1901), secs. 1637 to 1643, both inclusive.

*J. D. Call, Esq., C. C. Richards, Esq.,* and *E. M. Allison, Jr., Esq.,* for respondents.

### STATEMENT OF FACTS.

This action was brought by Ingrid Olson, widow of August Olson, and by Emil Olson, Minnie Olson, and Bertha Olson, infant children of August Olson, by their guardian *ad litem,* Ingrid Olson, their mother, heirs at law of August Olson, deceased, against the defendant corporation, to recover damages arising from defendant's alleged negligence in causing its engine and passenger train to approach a public crossing on its railroad track at Harrisville, Utah, at a danger-

ous and unreasonable rate of speed, of about fifty miles an hour, without giving any signal or warning of the approach of said train by ringing the bell of the locomotive or sounding the whistle, thereby causing the collision of said train with said August Olson, deceased, who was then traveling along said highway and crossing on a wagon, and was on said track, endeavoring to cross the same, resulting in the death of Olson. Judgment was entered for the plaintiffs, and defendant appeals.

It appears that Olson was a man of about forty-eight years of age, with a family; that his business was that of hauling freight between Ogden and Brigham City; that on December 14, 1897, at about four o'clock in the afternoon Olson started from Ogden to go to Brigham City, with a team of three horses hitched to a loaded double-box wagon, with covers over the bows of the back part of said wagon; that, while attempting to cross the railroad track from south to north, Olson was run into by a south-bound passenger train and was killed. The track at this point runs from northwest to southeast, at an angle of about twenty-six degrees, and from one-half mile north to same distance south is built upon a grade of about twelve feet to the mile descending south. Olson was sitting on the front end of the box, outside of the cover, driving his team. It was a cold, stormy, windy night. It was snowing, and rain was being blown from the northwest, and there was a heavy wind, which made some noise, and the night was very dark. Evidence was given tending to show that the train was running down grade at about fifty miles an hour. Its regular time was about thirty miles an hour. It left Brigham City, as some witnesses testify, ten or fifteen minutes late. Some of the witnesses residing near the crossing testify that the train was running faster at this point than they ever saw it run before. There was a whistling post forty-one rods north of the crossing where the collision occurred. Plaintiffs' witnesses testify that no whistle was sounded or bell rung

on the engine at the whistling post, and not until a moment before the engine struck the deceased. The whistle and the collision were almost instantaneous. · The crossing was a public highway, and was extensively traveled and used for all purposes. Five hundred and fifty feet southeast of the crossing, by the side of the track, is a passenger platform, used to receive and deliver passengers for trains. One hundred and thirty feet still further south is another public crossing over the railroad track. About one hundred teams cross these crossings daily, and the engineer knew of the crossings, and knew that they were traveled extensively. About forty-six families resided in Harrisville, along the highways leading to the crossing, but no store or schoolhouse is located there. Black willows and trees were growing along the right of way for some distance north of the crossing, and on the west side of the road on which Olson was traveling. Near the track there was a large bunch of willows. The witnesses differ as to what extent these willows would obstruct Olson's view. Some of them say they were twelve or thirteen feet high. Others say they would obstruct the view of the headlight at the crossing, and that a person could not easily see the headlight on a train while passing behind the willows to the north. The grade of the track continued northwesterly from the crossing half a mile to some poplar trees and willows, and from this point the track was on a descending grade.

MINER, C. J., after stating the facts, delivered the opinion of the court:

The respondents have filed a motion to strike from the record the bill of exceptions and abstract in this case on the ground that the bill was not settled, allowed, signed, and filed within ninety days after the entry of judgment, or notice thereof, after the determination of the motion for a new trial, as provided by section 3286, Revised Statutes

24 Utah—30

1898. It is conceded that it was not settled within the ninety days allowed by the above section, but it is contended that the trial court extended the time for such settlement beyond the ninety days, in accordance with the practice and laws of the State. Section 3286, Revised Statutes 1898, so far as we now deem it material, reads as follows: " ... A bill of exceptions shall in all cases be prepared, settled, signed, and filed within ninety days after the entry of judgment, or after notice of the same if the action were tried without a jury, or after the determination of a motion for a new trial." If this and other provisions of the statute contained no limitation that would affect the clause quoted, the respondents' contention might be considered tenable; but when we refer to other parts of the section we find that the appealing party has thirty days after judgment, or the determination of the motion denying a new trial, in which to prepare and serve the bill of exceptions. The opposite party has ten days thereafter in which to prepare and serve amendments thereto. The bill and amendments must within ten days thereafter be presented to the judge, upon five days' notice, or by delivery to the clerk, for the judge, for settlement. When received by the clerk, he must immediately deliver them to the judge, if he be in the county. If he be absent from the county, and either party desires the papers to be forwarded to the judge, the clerk must, upon notice in writing from such party, immediately forward them to the judge by mail, or other safe channel. If not thus forwarded, the clerk must deliver them to the judge immediately after his return to the county. When received the judge fixes the time for settlement, and the parties are to be notified. Under this section it will be readily observed that if the judge is absent from the county on business pertaining to his office in his district for any considerable length of time, or if the papers are not mailed, or he does not receive the papers, or becomes sick, the bill may not be settled within the ninety days allowed by this section. Section 3329, Revised Statutes 1898,

reads as follows:   "When an act to be done as provided in
this Code relates to the pleadings in the action, or the under-
takings to be filed, or the justification of sureties, or the prep-
aration of bills of exception or of amendments thereto, or to
the service of notices other than of appeal, the time allowed
by this Code may be extended, upon good cause shown, by
the court in which the action is pending, or a judge thereof."
This provision is contained in a distinct, separate section, and
authorizes the judge to extend the time for the preparation of
bills of exceptions, without any limitation of time; and, if
proper cause exists, such time may be extended beyond the
ninety days referred to in the section first quoted—that is, the
time allowed by the act for the preparation of bills of excep-
tion, or of amendments thereto, may be extended by the judge,
upon good cause shown.   This construction is in conformity
with section 2489, providing that proceedings under the stat-
ute shall be liberally construed, with a view to effect the ob-
ject of the statute and promote justice.   In this view of the
case, the provisions of the statute referred to may be construed
as directory, and the motion should be denied.   Gorringe v.
Read (decided at present term of this court), 24 Utah 455, 68
Pac. 147.

2.   The appellant contends that the court erred in per-
mitting the testimony to be given with reference to the speed
of the train at a public crossing.   The objection to the
admission of this testimony was too general.   No specific
ground of objection was stated to the court.   This was
not sufficient.   8 Enc. Pl. and Prac., 218, 219; 3 Jones, Ev.,
sec. 896; Snowden v. Coal Co., 16 Utah 372, 52 Pac. 599;
Culmer v. Clift, 14 Utah 291, 47 Pac. 85; Crocker v. Car-
penter, 98 Cal. 418, 33 Pac. 271.   The general rule to the
effect that the objection must be specific is subject to the ex-
ception that, if the evidence is clearly inadmissible for any
purpose, a general objection will be sufficient; but the evidence
was not clearly inadmissible, under this exception to the rule.

Snowden v. Coal Co., 16 Utah 366, 52 Pac. 599. Treating the question upon the merits, we are satisfied that the testimony was properly admitted. It will be remembered that the injury complained of occurred at a public crossing where over one hundred teams passed daily. Many houses where people resided were built along the road near it, and the engineer knew it to be a public thoroughfare, and that it was used extensively. The train had the right of way, but the engineer was bound to give due and timely warning of its approach, so that passing teams might stop and allow it to pass. The warning required to be given may not be due and timely if the speed of the train is such as to render the warning unavailing to passing teams. A speed of fifty miles an hour might not be unreasonable under some circumstances. Under others it might be dangerous thus to use the crossing. This would depend upon the warning given and the speed of the train. This speed at such a crossing as this one was shown to be should not be so great as to render useless the warning of the whistle and bell. Especially is this so when it appears, as in this case, that the accident occurred on a dark night, when a heavy wind and snow storm was in progress, which might prevent pedestrians from hearing the warning, and intervening trees and willows might prevent the train from being seen. The character of the crossing was an important circumstance to be taken into consideration in determining what rate of speed would be reasonable. The defendant was bound to use reasonable care to see that the train passed at a reasonable rate of speed, proportionate to the danger. The care should be measured by the apparent danger. A high rate of speed might be allowable in country districts where the crossings were not extensively used; but the same rate of speed might be dangerous to life and property in thickly inhabited country districts, and at public crossings where hundreds of teams are passing daily. The degree of care to be used by both parties was such as a prudent man

would exercise, under the circumstances of the case, in endeavoring fairly to perform his duty. As was said by Mr. Justice Bradley in Improvement Co. v. Steed, 95 U. S. 161, 24 L. Ed. 403: "The train has the preference and right of way, but it is bound to give due warning of its approach, so that the wagon may stop and allow it to pass, and to use every exertion to stop if the wagon is inevitably in the way. Such warning must be reasonable and timely. But what is reasonable and timely warning may depend on many circumstances. It can not be such if the speed of the train is so great as to render it unavailing. The speed of a train at a crossing should not be so great as to render unavailing the warning of its whistle and bell; and this caution is especially applicable when their sound is obstructed by winds or other noise, and when intervening objects prevent those who are approaching the railroad from seeing a coming train. In such cases, if an unslackened speed is desirable, watchmen should be stationed at the crossing." In Ellis v. Railroad Co., 138 Pa. 506, 21 Atl. 140, 21 Am. St. Rep. 914, the court said: "In other words, negligence is the absence of care according to the circumstances, and must be measured by the apparent danger. While a high rate of speed is allowable, and perhaps necessary, in rural districts, the same rate of speed might be attended with peril to life in more thickly populated sections and at dangerous crossings." Railroad Co. v. Miller, 39 C. C. A. 642, 99 Fed. 529; Hicks v. Railway Co., 164 Mass. 424, 41 N. E. 721, 49 Am. St. Rep. 471.

3. Under objection, in answer to a hypothetical question, a witness for the plaintiffs was permitted to state his opinion of the grade of the track at and below the place where the collsion occurred, the distance an object could be seen in front of the headlight, and the distance within which the train could be stopped. The witness was experienced in railroad business, had been an engineer for a considerable time prior to the accident, and knew the engine, train, head-

light, and surroundings, and was familiar with the track and grade in question. He stated that it would be about a twelve foot grade from the lower crossing to the crossing where the injury occurred, and that by means of the headlight the engineer could have seen Olson's wagon 450 or 500 feet ahead of the engine, had he been on the lookout. We are of the opinion that the testimony was proper. The witness was shown to be competent, and testified as an expert. The judge exercised a discretionary power in admitting the testimony, and his decision will not be reversed on appeal except a clear case of abuse of discretion is shown. Wright v. Southern Pac. Co., 15 Utah 424, 49 Pac. 309; State v. Webb, 18 Utah 450, 56 Pac. 159; Konold v. Railway Co., 21 Utah 379, 60 Pac. 1021; 12 Am. and Eng. Enc. Law (2 Ed.), 423.

4. At the conclusion of the plaintiffs' testimony the defendant moved the court for a judgment of nonsuit against the plaintiffs for the reason, among others, that the testimony shows that the plaintiffs' intestate was guilty of gross negligence, and that no negligence was shown on the part of the defendant, and claims that there was no evidence to justify the court in overruling the motion for a nonsuit. This motion is met by the objection from the plaintiffs that the bill of exceptions does not contain, or purport to contain, all the evidence upon the trial, and therefore the court should decline to consider the error assigned. This contention on the part of the plaintiffs is sustained by repeated decisions of this court, and by the weight of authority. In Mining Co. v. Gisborn, 21 Utah 68, 59 Pac. 518, this court held that, where a bill of exceptions does not purport to set forth the substance of all of the evidence adduced at the trial upon the points in issue, it will be presumed upon appeal that there was sufficient proof to support the findings and decision of the trial court. In Cochrane v. Bussche, 7 Utah 233, 26 Pac. 294, it was held that, "where the record on appeal from an order dissolving an attachment does not show all the evidence upon which the

action of the trial court was based, it will be presumed that the lower court acted upon sufficient evidence." The same doctrine is held in Culmer v. Caine, 22 Utah 216, 61 Pac. 1008; Snyder v. Emerson, 19 Utah 321, 57 Pac. 300; Warner v. Association, 8 Utah 431, 32 Pac. 696; Railroad Co. v. Lorentzen, 24 C. C. A. 592, 79 Fed. 291; Association v. Robinson, 20 C. C. A. 262, 74 Fed. 10; Alridge v. Alridge, 120 N. Y. 614, 24 N. E. 1022; James v. Dexter, 113 Ill. 654; Wood v. Railway Co., 49 Mich. 370, 13 N. W. 779; Beatty v. O'Connor, 106 Ind. 81, 5 N. E. 880; Antisdel v. Railway Co., 26 Wis. 145, 7 Am. Rep. 44; McLain v. Morse, 42 Neb. 52, 60 N. W. 334; State v. Strohbehn, 96 Iowa 339, 65 N. W. 304; Railway Co. v. Amos, 54 Ark. 159, 15 S. W. 362; White Pine Co. v. Herrick, 19 Nev. 311; 10 Pac. 215; People v. Williams, 45 Cal. 25. The general rule is held to be that while a moving party is required to set forth so much of the evidence, and no more, or the substance of the evidence, as may be necessary to explain or sustain the point specified in his bill of exceptions, he is not required to set forth all the evidence in full. In the present case this court is asked to find that there was no evidence in the case to sustain the decision of the court, without knowing what the evidence was. The bill of exceptions in this case does not purport to give all the evidence, nor even the substance of all the evidence, bearing upon the question raised in the motion for a nonsuit. The presumption, therefore, would be that there was evidence to justify the ruling of the court. But if we consider this question upon the merits, we are satisfied that no error was committed by the trial court in overruling the motion for a nonsuit. The evidence of plaintiffs was of such a character that the court could not say that the defendant was not guilty of the negligence that caused the injury. When a nonsuit is requested it is the duty of the court to assume as true all facts which could be properly found by the jury from all the evidence, and before the court can grant a nonsuit it

must appear that the plaintiff has failed to make out a prima facie case. As held in Reese v. Mining Co., 15 Utah 460, 49 Pac. 824: "When a given state of facts is such that reasonable men might fairly differ upon the question as to whether there was contributory negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusions from them that the question of contributory negligence is ever considered one of law for the court." This general rule so often laid down by this court follows the case of Railroad Co. v. Ives, 144 U. S. 428, 12 Sup. Ct. 679, 36 L. Ed. 485, and should always be kept in mind when considering this question. Wines v. Railway Co., 9 Utah 232, 33 Pac. 1042; Lowe v. Salt Lake City, 13 Utah 91, 44 Pac. 1050, 57 Am. St. Rep. 708; Dederichs v. Railway Co., 13 Utah 34, 44 Pac. 649; Saunders v. Southern Pac. Co., 13 Utah 275, 44 Pac. 932.

5. Exception was taken to the refusal of the court to sustain the general objection made by the defendant to questions' put to Mrs. Taylor upon cross-examination. The questions propounded had a tendency to show the interest or bias of the witness, and under the circumstances it was not prejudicial error to permit the witness to answer them. Neither do we find any reversible error in the ruling of the court in allowing a question to Mrs. Dabb as to conversations she had with the witness Taylor about the manner in which trains passed over the crossing, and also concerning the blowing of the whistle. She stated that she had a conversation with Mrs. Taylor, but what was said was ruled out because the attention of the witness was not called to the time, place, and circumstances of the conversation. The denial of Mrs. Taylor that she "heard two or three whistles, and then a crash," was not allowed to be disputed by Mrs. Dabb. No prejudice could arise to the defendant from the fact that the question was allowed when the answer was rejected. When propounding impeaching questions to a witness concerning

his prior inconsistent statements to another, the time, place, and circumstances should be stated with reasonable certainty, in order to allow a proper foundation for the questions. 3 Jones, Ev., sec. 849; 1 Greenl. Ev. (16 Ed.), sec. 462.

6. Exception is taken to instruction No. 10, wherein the court told the jury: "If you find from the evidence that the crossing upon which the deceased was killed was a public highway, and had been used as such for a long number of years prior to the accident and if you further find that a large number of teams and persons passed over said crossing each day, and at all hours of the day, then I charge you that it was the duty of the engineer of the train, when approaching the crossing, to have been on the lookout for teams and persons on the crossing, or in such close proximity thereto as to be in danger of colliding with the train, then to use all reasonable care and diligence and make use of all the appliances at his command to have the train under control, and stop if necessary to avoid a collision with and injury to such team or persons; and if you further find that the engineer was negligent in not keeping such lookout, and in not discovering the peril of the deceased in time to have avoided the accident, and that he did or could have discovered him, and the peril he was in, in time to avoid the collision, if he had been on the lookout, then I charge you that the defendant is liable for the killing of Olson, and the plaintiffs are entitled to recover in this action." This instruction should be considered and construed in connection with the other instructions bearing upon the whole subject. The seventh instruction reads as follows: "You are charged that it was the duty of the deceased, as he approached the said crossing just before the time of the accident which resulted in his death, to both listen for and look in the direction from which the train approached, to ascertain if any train was approaching, and it was his duty to continue to so listen and look until he had crossed said railroad. The

failure of the company, if it did, to ring the bell, sound its whistle, or give any alarm of its approach, did not relieve the deceased from the obligations to perform the said duty of listening and looking, and if the said deceased, as he approached said crossing, by the use of his senses of sight and hearing in looking and listening for the approach of the said train, could have discovered that it was approaching, and have avoided said collision, then the plaintiffs can not recover in this case." The eighth instruction is as follows: "If without so looking and listening for an approaching train, a person attempts to cross a railroad track, and is injured by a passing train, his own careless conduct is deemed, in law, to have assisted in bringing about the injury, and he can not complain of the other party concerned in the transaction, even though such other party may have also been negligent." It is contended that the tenth instruction omits the subject of contributory negligence. The charge, taken as a whole, fully covered the question of negligence on the part of the defendant, and contributory negligence on the part of the plaintiff. It is not always possible to cover all the questions arising in a case in one sentence or paragraph. It is sufficient if the whole charge, when taken and construed together, states the law fairly and correctly. As said in Hamer v. Bank, 9 Utah 220, 33 Pac. 941: "The mere omission in one part of the charge by the court of certain elements, though material, when they are substantially given in another part, will not be ground for reversing the judgment. On this point, Thompson, in his work on Trials (vol. 2, sec. 2407), states the law as follows: 'The charge is entitled to a reasonable interpretation. It is construed as a whole, in the same connected way in which it was given, upon the presumption that the jury did not overlook any portion, but gave due weight to it as a whole; and this is so, although it consists of clauses originating with different counsel, and applicable to different phases of the evidence. If, when so construed, it presents the law fairly and correctly

to the jury, in a manner not calculated to mislead them, it will afford no ground for reversing the judgment, although some of its expressions, if standing alone, might be regarded as erroneous, or because there may be an apparent conflict between isolated sentences, or because its parts may be in some respects slightly repugnant to each other, or because some of them, taken abstractly, may have been erroneous.'" Anderson v. Mining Co., 16 Utah 38, 50 Pac. 815; State v. McCoy, 15 Utah 141, 49 Pac. 420; Reese v. Mining Co., 17 Utah 496, 54 Pac. 759.

Exception is taken to the court's instruction on the subject of damages and the admission of certain testimony. We have examined all these and other exceptions taken by the appellant, and find no reason for reversing the judgment of the court below, based upon any exception taken and argued or presented in the briefs of appellant's counsel.

The judgment of the district court is affirmed, with costs. BASKIN and BARTCH, JJ., concur.