Appeal from First District.

## BLACKBURN v. BAKER.

No. 2720.   Decided Aug. 7, 1915.   Rehearing denied Nov. 20, 1915.
(152 Pac. 1184.)

1. APPEAL AND ERROR—BILL OF EXCEPTIONS—TIME FOR SETTLEMENT
—STATUTES—EFFECT.  In spite of Comp. Laws 1907, section 3286,
providing that "a bill of exceptions shall in all cases be properly
settled, signed, and filed within 90 days after the entry of judg-
ment, * * * " a bill of exceptions will not be struck from the
record, where it was served in time, but was not finally filed and
settled in time.[1]   (Page 220.)

2. SALES—BUYER—EVIDENCE.  Evidence, in an action on an account
for lumber sold, *held* insufficient to show that the sale was made
to the defendant, and not to the company of which he was the
agent and manager.   (Page 220.)

Appeal from District Court, First District; Hon. *J. D.
Call,* Judge.

Action by Thomas H. Blackburn, as administrator of John
B. McMaster, deceased, against Henry C. Baker.

Judgment for plaintiff.   Defendant appeals.

REVERSED and REMANDED.

*A. G. Horn* for appellant.

*Skeen Bros. & Wilkins* for respondent.

STRAUP, C. J.

This action was brought to recover on an alleged balance
claimed to be due for merchandise, consisting principally
of lumber and other building material, amounting to $365,
and alleged to have been sold and delivered to the defendant
between the 24th of December, 1896, and the 10th of June,
1903.   The material was sold by McMaster & Forsgren, part-
ners, in the lumber and hardware business at Brigham City.
McMaster and his son, and later McMaster alone, succeeded
to the business and to the account, who sued on it.   He died

[1] *Olson* v. *O. S. L. R. Co.,* 24 Utah, 460, 68 Pac. 148.

after the first trial. On the second, the administrator of his estate was substituted as plaintiff. The case was tried to the court, who made findings and rendered a judgment in favor of the plaintiff and against the defendant, in the sum of $252 and interest, amounting in all to $426.60. The defendant appeals.

The plaintiff filed a motion to strike the bill of exceptions on the ground that it was not served nor settled in time. The findings and decree were filed on the 9th of April, 1914. On the 25th, the defendant was served with notice thereof, which was filed on the 27th. The court extended the time to serve a bill to the 1st of August. On the 23d of July the bill was served, and it, together with proposed amendments, was filed before settlement, August 6th. It was settled and signed, and filed after settlement, on the 5th of September. The statute (Comp. Laws 1907, section 3286) provides that:

"A bill of exceptions shall in all cases be prepared, settled, signed, and filed within ninety days after the entry of judgment, or after notice of the same if the action were tried without a jury, or after notice of the determination of a motion for a new trial."

The bill was served within the time enlarged by the court, and within ninety days from notice of the entry of the judgment, but was not settled, signed, or filed within that time. For this reason it is asked to be stricken. On authority of *Olson* v. *O. S. L. R. Co.*, 24 Utah, 460, 68 Pac. 148, the motion is denied.

Among the assignments is one challenging the findings that the lumber and material were sold to the defendant. He contends that the record, without any substantial conflict, shows that they were sold and delivered to, and were used by, the Consolidated Mining & Smelting Company, a corporation, operating a mine in Gibbs Canyon but a few miles north of Brigham city and of McMaster & Forsgren's place of business, and of which mining company he was its manager. It is very clearly shown, and without dispute, that all of the lumber and material were delivered on or near the properties of the mining company, and were

used by it in the construction of a building, and in and about its mine, and that none of them were used by the defendant. It also is made to appear without dispute that the defendant was the manager of the mining company. According to some entries made in the daybook of McMasters & Forsgren, the material was charged to the defendant. According to their "itemized sheet accounts" and ledger they were charged to the mining company thus: "C. M. & S. Co., by H. C. Baker, bought of McMaster & Forsgren," etc. McMaster & Forsgren, in 1902, filed a lien against the mining company for the material here in controversy. As to that, McMaster himself testified on cross-examination:

"Q. You filed a lien against the mining company, did you not, for these goods along about 1902? A. Possibly. Q. And in that lien you stated that the goods went up to that mining company, didn't you? A. Well, that was our knowledge. Q. And you stated it? A. Yes, sir. Q. You satisfied that lien, didn't you, afterwards? A. I did, to satisfy Mr. Baker."

He further testified that the mining company "did lots of trading with him in the early 90's."

In April, 1896, the defendant wrote McMaster and Forsgren this letter:

"Ogden, Utah, April 26, ——6.

"McMaster & Forsgren, Brigham City, Utah—Gentlemen: May I ask why it is that you or your clerks persist in making out bills of lumber and other goods to me personally, though as you well know, all the material is ordered by me, or on my order, for and on acct. of the Consolidated Mining & Smelting Company, and that as general manager I give these orders? Be so kind as to make out all bills to the above company, and if you have an account on your books in my name have it changed to the name of above co. Yours truly, H. C. Baker, Genl. Mngr. C. M. & S. Co."

That the letter was received in due course of mail by McMaster & Forsgren is not disputed. All that plaintiff's counsel say with respect to it is that the letter was irrelevant, and ought not to have been admitted because it was written more than a year prior to the sale of the first item of goods

here sued for. But the letter was written after McMaster & Forsgren began to do business with the mining company, and before the particular goods here sued for were sold and delivered. It, in unmistakable terms, is an express notice and warning that all of the material ordered by the defendant was for, and on account of, the mining company.

McMaster and others, connected with the business of Mc-Master & Forsgren, testified that the material was sold and delivered to the defendant. But the testimony was given in this wise: They were shown entries in book accounts of McMaster & Forsgren, and were asked by plaintiff's counsel in whose handwriting the entries were. They answered that they were in their handwriting, or that of the bookkeeper. Then their attention was called to a particular entry, and after testifying that they made it, or that it was made by the bookkeeper, were asked, "Did you make the sale?" or, "Did you conduct the transaction?" They answered: "Yes, sir." Then, "Q. To whom did you deliver the material? A. To Mr. Baker." But in each instance, each witness, on cross-examination, testified that the material was not, in person, sold or delivered to the defendant, but that it was sold and delivered to some one in his employ, or to some one on orders from him. Each of them testified that he had no personal knowledge of any sale or delivery made in person to the defendant, and that the goods were sold and delivered to him, because of the entries so appearing in the account books of McMaster & Forsgren. When asked why the account was carried on the ledger and on the "itemized sheets" in the name of the mining company, McMaster testified that the name of the company was added at the request of the defendant after the goods were sold and delivered. McMaster further testified that:

"Baker came to me and made arrangements to get the stuff and sent for it as he needed it."

It is not shown that Baker had any one in his employ, or that he was doing or conducting any business whatever on his own behalf, nor were the contents of the orders shown. The witnesses but testified that goods were sold on "orders from Baker." The plaintiff was asked, but was unable, to produce

the orders, nor did he give any evidence as to their contents. We think all the evidence, when considered as a whole, shows that all that Baker did was done as manager of the mining company, and that the goods purchased were taken to the properties of the mining company and were used by it. That he made arrangements for the material, gave orders for it, sent persons to get it, is just as consistent with the defendant's theory that all was done as manager of the mining company as that is was done on his own behalf. When the whole of the transcript of the record is read, it is difficult to reach any other conclusion than that the material with the knowledge of McMaster & Forsgren, was sold to the mining company and was used by it in the operation of its mine. If, on this record, the defendant shall be held personally liable for the material ordered by him, then may any agent or manager of a corporation be held personally liable for goods or merchandise ordered or purchased by him for, and on behalf of, the corporation. Thus, upon a consideration of the whole record, we are of the opinion that there is no substantial evidence to support the findings that the goods here in controversy were sold or delivered to the defendant, but, to the contrary, that the evidence, without any substantial conflict, shows that they with the knowledge of McMaster & Forsgren, were sold and delivered to the mining company.

The judgment of the court below is therefore reversed, and the case remanded for a new trial. Cost to the appellant.

FRICK and McCARTY, JJ., concur.